Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/29/2016 09:06 AM CDT

State of Nebraska, appellee, v.
Courtney W. Starks, appellant.
___ N.W.2d ___

Filed July 29, 2016.    No. S-15-822.

1. **Postconviction: Constitutional Law: Appeal and Error.** In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the records and files affirmatively show that the defendant is entitled to no relief.

2. **Postconviction: Proof: Appeal and Error.** A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous.

3. **Postconviction: Constitutional Law: Proof.** In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable.

4. ____: ____: ____. A court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution.

5. **Postconviction: Proof.** If a postconviction motion alleges only conclusions of fact or law, or if the records and files in the case affirmatively show that the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing.

6. **Constitutional Law: Effectiveness of Counsel.** A proper ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial.

7. **Effectiveness of Counsel: Proof: Words and Phrases: Appeal and Error.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed.

2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome.

 8. **Postconviction: Effectiveness of Counsel: Appeal and Error.** A claim of ineffective assistance of appellate counsel which could not have been raised on direct appeal may be raised on postconviction review.

 9. **Effectiveness of Counsel: Appeal and Error.** When analyzing a claim of ineffective assistance of appellate counsel, courts usually begin by determining whether appellate counsel actually prejudiced the defendant. That is, courts begin by assessing the strength of the claim appellate counsel failed to raise.

10. ____: ____. Counsel's failure to raise an issue on appeal could be ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal.

11. **Trial: Prosecuting Attorneys: Words and Phrases.** Prosecutorial misconduct encompasses conduct that violates legal or ethical standards for various contexts because the conduct will or may undermine a defendant's right to a fair trial.

12. **Trial: Evidence.** There are three components of a true violation under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963): The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.

Appeal from the District Court for Douglas County: MARLON A. POLK, Judge. Affirmed.

Courtney W. Starks, pro se.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, MILLER-LERMAN, CASSEL, STACY, and KELCH, JJ.

Miller-Lerman, J.

## NATURE OF CASE

Courtney W. Starks, who stands convicted of first degree murder and use of a weapon to commit a felony, appeals the order of the district court for Douglas County which denied his motion for postconviction relief without an evidentiary hearing. Starks generally claimed that his counsel on direct appeal provided ineffective assistance by failing to raise several issues on appeal. We affirm the district court's denial of Starks' motion for postconviction relief.

## STATEMENT OF FACTS

Starks was convicted of first degree murder and use of a weapon to commit a felony in connection with the death of Linda Wierzbicki in 1986. We affirmed his convictions and sentences in *State v. Starks*, 229 Neb. 482, 427 N.W.2d 297 (1988), and a complete discussion of the facts of the case may be found therein. Only those facts relevant to Starks' claims in the current postconviction action are set forth here.

One of Starks' assignments of error in his direct appeal was that the trial court erred when it failed to suppress his confession because the confession was the product of an illegal arrest. He argued that police officers "arrested" him and took him to police headquarters for questioning and that the officers lacked probable cause to believe he had committed the murder. We noted, however, that when Starks made the confession, he was not under arrest for this murder and that instead, he had been arrested for driving under the influence and had been transported to a police station for booking on several outstanding warrants that the arresting officer had discovered. Later that day, while Starks was still in jail based on this arrest, Officers James Wilson and Clyde Nutsch, neither of whom was the officer who had arrested Starks for driving under the influence, received a tip that Starks had been involved in the killing of Wierzbicki. Wilson and Nutsch discovered that Starks was already in custody,

and they transported him from the jail to police headquarters where they questioned him regarding the murder and he made his confession.

We concluded that Starks' assignment of error failed because he was not arrested by Wilson and Nutsch when he was taken to police headquarters for questioning. We reasoned that because Starks was already under arrest, "there was no new arrest, legal or otherwise, [and therefore] his confession was not the fruit of an illegal arrest, and the trial court did not err in refusing to suppress the confession." *State v. Starks*, 229 Neb. at 487, 427 N.W.2d at 300.

Starks filed a pro se motion for postconviction relief pursuant to Neb. Rev. Stat. § 29-3001(4) (Cum. Supp. 2014), generally alleging ineffective assistance of appellate counsel. Although Starks had more than one appellate counsel, we adopt the singular reference to his counsel. In his motion for postconviction relief, Starks made several assertions that his counsel on direct appeal, who was different from his trial counsel, failed to adequately familiarize himself with Starks' case and that as a result, Starks was prejudiced by being denied appellate review of certain purportedly meritorious claims. Starks then set forth three specific errors that he claimed appellate counsel did not adequately present in the direct appeal.

Starks first claimed that the trial court had erred by admitting his confession "under an unconstitutional and erroneous standard." Starks specifically referred to the trial court's rejection of his argument that the police used deception in order to obtain the confession. At trial, the court determined that if there was deception, it did not produce a false or unworthy confession. Starks alleged that his appellate counsel "never assigned as error and argued that the trial court committed reversible error by admitting [his] confession under an erroneous standard." Starks alleged that the proper standard was "the totality of circumstances test."

Second, Starks claimed that there was prosecutorial misconduct in his trial, because the State allowed its witness, Nutsch,

to provide false testimony in connection with Starks' assertion that his confession was coerced. Starks alleged that at trial, he testified that Wilson and Nutsch had "used gruesome Polaroid photos as a form of psychological coercion to get him to confess." Starks further alleged that Nutsch testified, allegedly falsely, that the officers had not shown Starks any photographs and that they did not have any photographs at the time they interviewed Starks. The trial record shows that Nutsch testified that it took 24 hours to develop the film photographs taken at the scene and that the officers interviewed Starks within 24 hours after the murder had happened.

Starks claimed in his postconviction motion that "years after the trial," he came into possession of a report in which a police crime laboratory technician stated that she had taken seven Polaroid photographs which she had "turned over" to Nutsch. The relevant portion of the report was attached to Starks' postconviction motion. Starks argued that the report showed that Nutsch had lied when he said that he did not have any photographs at the time he interviewed Starks. Starks claimed in his postconviction motion that his counsel on direct appeal provided ineffective assistance when "counsel never assigned as error and argued that the prosecution committed reversible error by eliciting false testimony" from Nutsch.

Third, Starks claimed that at trial, the State did not fully comply with his discovery request for "all photographs," because the State did not provide the seven Polaroid photographs referenced in the laboratory technician's report. Starks alleged that such failure was a violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), because the Polaroid photographs were material to his claim that his confession was the result of coercion and that they could have been used to impeach Nutsch's testimony to the effect that he did not have any photographs at the time he questioned Starks. In his postconviction motion, Starks asserted that counsel in his direct appeal "never assigned as error and

argued prosecutorial misconduct for suppression of requested Brady material."

The district court denied Starks' motion for postconviction relief without granting an evidentiary hearing. In its order denying the motion, the court first addressed Starks' allegation that his appellate counsel failed to adequately familiarize himself with the case. The court determined that this statement was a conclusory allegation and that Starks had failed to specify how the outcome would have been different if counsel had become more familiar with the case.

The court then addressed Starks' claim that appellate counsel had failed to assert that the trial court applied an improper standard when it reviewed the legality of Starks' confession. The court determined that this claim was without merit, because the legality of the confession was raised and reviewed on direct appeal and this court affirmed the trial court's ruling. The court further stated that it had reviewed the trial record and did not find any evidence that Starks' confession was obtained by police deception.

The court next addressed Starks' claim that appellate counsel failed to assert that the State knowingly presented false testimony, specifically Nutsch's trial testimony that he did not possess or show any photographs to Starks during the interview that resulted in his confession. The court determined that there was no evidence that Nutsch had testified falsely or that the State knew or should have known that Nutsch was giving false testimony. The court reasoned that although the laboratory technician's report stated that Polaroid photographs were given to Nutsch at some point, the report did not show that Nutsch had the photographs when he interviewed Starks.

The court finally addressed Starks' claim that appellate counsel failed to assert that the State committed a *Brady* violation when it did not provide the seven Polaroid photographs during the discovery process. The court found no merit to the claim and reasoned that it was logically inconsistent for

Starks to argue that he had never seen the Polaroid photographs but that the photographs were material to proving his claim that the police had coerced his confession by showing him the Polaroid photographs. The court noted that Starks did not allege that the photographs were newly discovered exculpatory evidence.

The district court concluded that the files and records in Starks' case affirmatively showed that Starks was entitled to no postconviction relief. The court therefore denied the motion without an evidentiary hearing.

Starks appeals.

## ASSIGNMENT OF ERROR

Starks generally claims that the district court erred when it found that there was no merit to each of his claims and denied his motion for postconviction relief without an evidentiary hearing.

## STANDARDS OF REVIEW

[1,2] In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the records and files affirmatively show that the defendant is entitled to no relief. *State v. DeJong*, 292 Neb. 305, 872 N.W.2d 275 (2015). A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous. *State v. Crawford*, 291 Neb. 362, 865 N.W.2d 360 (2015).

## ANALYSIS

[3] Starks claims that the district court erred when it denied his postconviction motion without an evidentiary hearing. We therefore review standards relating to postconviction relief. The Nebraska Postconviction Act, Neb. Rev. Stat. § 29-3001 et seq. (Reissue 2008 & Cum. Supp. 2014), provides that

postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable. Thus, in a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable. *State v. DeJong, supra*.

[4,5] A court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution. *State v. DeJong, supra*. If a postconviction motion alleges only conclusions of fact or law, or if the records and files in the case affirmatively show that the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing. *Id.*

[6,7] Starks' postconviction claims center on the alleged ineffective assistance provided by his counsel on direct appeal. A proper ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial. *Id*. To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. DeJong, supra*. To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. *State v. DeJong*, *supra*. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *Id*.

[8-10] A claim of ineffective assistance of appellate counsel which could not have been raised on direct appeal may be raised on postconviction review. *State v. Nolan,* 292 Neb. 118, 870 N.W.2d 806 (2015). When analyzing a claim of ineffective assistance of appellate counsel, courts usually begin by determining whether appellate counsel actually prejudiced the defendant. *Id*. That is, courts begin by assessing the strength of the claim appellate counsel failed to raise. *Id*. Counsel's failure to raise an issue on appeal could be ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *Id*.

Starks initially argues that the district court erred when it determined that his allegation that his appellate counsel failed to adequately familiarize himself with the case was a conclusory allegation and that Starks failed to specify how the outcome would have been different if appellate counsel had become more familiar with the case. Starks contends that the court misread what he describes as "the preamble and introduction" to his specific claims of ineffective assistance of appellate counsel. Brief for appellant at 15. We therefore read this portion of Starks' motion for postconviction relief as being, as he characterizes it, an introduction to his specific claims of ineffective assistance of appellate counsel rather than as a separate claim for postconviction relief.

Reading Starks' postconviction motion in this manner, Starks alleged that appellate counsel failed to adequately familiarize himself with the record and that as a result, appellate counsel provided ineffective assistance when he failed to assert on direct appeal that (1) the trial court applied an improper standard when it reviewed the legality of Starks' confession, (2) the State knowingly presented false testimony by Nutsch to the effect that he did not possess or show any photographs to Starks during the interview that resulted in Starks' confession, and (3) the State committed a violation under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215

(1963), when it failed to provide the seven Polaroid photographs during discovery. The district court rejected each of these claims of ineffective assistance of appellate counsel, and, as we discuss below, we agree that these claims did not merit an evidentiary hearing or relief.

First, Starks alleged that appellate counsel failed to claim that the trial court applied an improper standard when it reviewed the legality of his confession. Contrary to this argument, in Starks' direct appeal to this court, *State v. Starks*, 229 Neb. $82, 427 N.W.2d 297 (1988), one of the assigned errors was that the trial court erred when it failed to suppress his confession. Although on direct appeal Starks did not specifically claim that the trial court used an improper standard, he argued that the trial court erred when it refused to suppress the confession, and this court fully examined this ruling.

Having reviewed the record, we agree with the district court's assessment that the trial record shows no error by the trial court in its consideration and rejection of Starks' challenge to his confession. In his postconviction motion, Starks contends that the trial court did not consider the evidence he presented to show that the police used deception and coercive tactics to obtain his confession. Contrary to this contention, the trial record shows that Starks testified that the police showed him gruesome photographs from the crime scene and he asserted at trial that the police used such tactics to overbear his will and force a confession. The record also shows that the State presented evidence to counter Starks' claims of an involuntary confession, including testimony by the police officer who obtained the confession.

After considering the evidence, the trial court rejected Starks' claim that the confession should be suppressed as having been coerced. Contrary to Starks' claim, the record does not show that the trial court failed to properly consider Starks' claims; instead, it shows that the trial court rejected his claim after considering the evidence. Furthermore, counsel on direct appeal challenged the legality of the confession. By its nature,

consideration of such challenge necessarily incorporated an assessment of the propriety of the trial court's legal analysis. We determined on direct appeal that "the trial court did not err in refusing to suppress the confession." *State v. Starks*, 229 Neb. at 487, 427 N.W.2d at 300. We therefore determine that the district court did not err when it rejected Starks' postconviction claim that his direct appeal counsel provided ineffective assistance by failing to raise issues regarding the legality of his confession.

Starks next asserts that appellate counsel failed to claim that the State engaged in prosecutorial misconduct by knowingly presenting false trial testimony by Nutsch to the effect that he did not possess or show any photographs to Starks during the interview that resulted in Starks' confession. Starks' argument in this respect is based on his alleged recent discovery of the laboratory technician's report in which it was stated that seven Polaroid photographs were given to Nutsch. The district court rejected this claim on the basis that the report did not show that the technician had given the Polaroid photographs to Nutsch before he interviewed Starks. We conclude that even if it could be inferred from the report that Nutsch had been given the Polaroid photographs before the interview, the district court properly rejected this claim.

[11] We have stated that prosecutorial misconduct encompasses conduct that violates legal or ethical standards for various contexts because the conduct will or may undermine a defendant's right to a fair trial. *State v. Custer*, 292 Neb. 88, 871 N.W.2d 243 (2015).

Fundamental to Starks' claim surrounding allegedly false testimony by Nutsch are Starks' testimony at trial that he was shown gruesome photographs and the allegation in his postconviction motion that he was shown "gruesome Polaroid photos as a form of psychological coercion." At trial, Starks in fact testified that he was shown gruesome photographs, which were in evidence, but he did not state that they were Polaroid photographs. The testimony of Nutsch at trial focused

on film photographs as distinguished from Polaroid photographs, and he stated that he did not show Starks photographs at the time of the interview because the "[c]rime Lab had the film, and it takes 24 hours for the film to turn around and come back and be developed and printed." Read broadly, the records and files show that although there was a conflict in the testimony as to whether photographs were shown to Starks, the discrepancy at trial was limited to whether film photographs were shown to Starks. The conflict was developed at trial. Even giving Starks the benefit of the assumption that he was shown gruesome photographs, we find there is no indication that the testimony of Nutsch, which was addressed to film photographs, was inaccurate or that the prosecutor knowingly presented false testimony. Given the context of the trial testimony surrounding the showing of photographs, we are not persuaded that Starks was denied his right to a fair trial.

The trial court rejected Starks' argument that his confession was coerced, and Starks has not shown how the existence of the Polaroid photographs would have changed the trial court's conclusion. In light of the record presented to the court in the original trial, we determine that the district court did not err when it rejected Starks' postconviction claim that appellate counsel provided ineffective assistance by failing to claim that the State engaged in prosecutorial misconduct by knowingly presenting false testimony by Nutsch.

[12] Finally, Starks alleged in his postconviction motion that appellate counsel failed to claim that the State committed a violation under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), when it failed to provide the Polaroid photographs during the discovery process. We have stated that there are three components of a true *Brady* violation: """"The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have

ensued."'" *State v. Scott*, 284 Neb. 703, 719, 824 N.W.2d 668, 685 (2012). As explained below, we find no *Brady* violation, and therefore, appellate counsel was not deficient in failing to raise the *Brady* issue.

The Polaroid photographs are not in the record, and in any event, Starks has failed to demonstrate how their contents would have affected the outcome of this case. The report attached to the motion for postconviction relief states: "A total of seven (7) color polaroid photos were also taken by [the laboratory technician] and turned over to Officer NUTCH [sic]." The report does not otherwise directly disclose the contents of the Polaroid photographs. However, the report describes some photographs as depicting the driveway area, an air conditioning unit, and several shoe impressions. It is not clear that these mundane photographs were contained in the Polaroid photographs or other photographs.

Although we cannot infer—nor does Starks suggest—that the Polaroid photographs showed anything exculpatory for use by the accused, the report itself may have served to impeach the testimony of Nutsch, who claimed to have had no photographs at the time he interviewed Starks. But, as explained below, the record shows that the failure to produce this alleged *Brady* material was not prejudicial.

Even if the Polaroid photographs had been produced and their content was "gruesome," they could be no more gruesome than the enlarged photographs that were in fact received in evidence at the trial, explicitly showing the victim's bloodied body, and which, according to Starks, caused him to confess. At trial, Starks referred to these photographs as having overborne his will and caused him to confess. More and cumulative photographs, even if gruesome, would not have assisted Starks. Furthermore, at trial, Nutsch stated he had no photographs at the time he interviewed Starks. The accuracy of this testimony was directly challenged by the testimony of Starks, who referred to the photographs in evidence and testified that these were the photographs Nutsch had shown him

which caused him to confess. So, the persuasive value of the Polaroid photographs is absent and the credibility of Nutsch was in fact already made an issue at trial. The report and Polaroid photographs are not true *Brady* material, and Starks was not prejudiced by the absence of the report and Polaroid photographs from the trial. We therefore determine that the district court did not err when it rejected Starks' postconviction claim that appellate counsel provided ineffective assistance by failing to raise the alleged *Brady* violation.

## CONCLUSION

We conclude that the district court did not err when it determined that a review of the records and files affirmatively showed that Starks' postconviction claims were without merit and did not entitle him to an evidentiary hearing. We therefore affirm the district court's order which denied Starks' motion for postconviction relief.

AFFIRMED.