Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/10/2017 09:11 AM CST

STATE OF NEBRASKA, APPELLEE, V.
JERRY WATSON, APPELLANT.
___ N.W.2d ___

Filed February 10, 2017.    No. S-16-335.

1. **Postconviction: Constitutional Law: Judgments.** Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable.

2. **Postconviction: Constitutional Law: Proof.** In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable.

3. ____: ____: ____. A court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution.

4. **Postconviction: Proof.** If a postconviction motion alleges only conclusions of fact or law, or if the records and files in the case affirmatively show that the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing.

5. **Constitutional Law: Effectiveness of Counsel.** A proper ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial.

6. **Effectiveness of Counsel: Proof: Words and Phrases: Appeal and Error.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate

a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome.

7. **Homicide.** Malice is not an element of second degree murder.

8. **Homicide: Jury Instructions.** A defendant convicted of first degree murder under a step instruction cannot be prejudiced by any error in the instructions on second degree murder or manslaughter, because under the step instruction, the jury would not have reached those levels of homicide.

9. **Constitutional Law: Motions to Suppress: Search and Seizure.** Motions to suppress are designed to remedy unlawful acts, such as an unconstitutional search and seizure.

10. **Evidence.** Assertions concerning the chain of custody go to the weight to be given to the evidence presented rather than to the admissibility of that evidence.

Appeal from the District Court for Douglas County: Peter C. Bataillon, Judge. Affirmed.

Matthew Richard Kahler, of Finley & Kahler Law Firm, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Erin E. Tangeman for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Heavican, C.J.

## INTRODUCTION

Jerry Watson was convicted of first degree murder and use of a weapon to commit a felony. Watson was sentenced to life imprisonment for the murder conviction and an additional 10 to 20 years' imprisonment on the use conviction. This court affirmed Watson's convictions and sentences.[1] Watson later

---

[1] *State v. Watson*, 285 Neb. 497, 827 N.W.2d 507 (2013).

sought postconviction relief. His motion was denied without an evidentiary hearing. He appeals. We affirm.

## FACTUAL BACKGROUND

In 2011, Watson was convicted of the murder of Carroll Bonnet. Bonnet was killed in October 1978. The Omaha Police Department's cold case homicide unit began further investigation into Bonnet's murder in 2009. In connection with that investigation, certain evidence was subjected to new scientific testing, and from that testing, Watson became a suspect in Bonnet's murder.

Bonnet was a 61-year-old man living in Omaha, Nebraska. Bonnet was found in his apartment by the manager of Bonnet's apartment complex, lying naked and face down with a stab wound to his abdomen. Bonnet's telephone cord had been severed, his wallet was missing, and three towels containing fecal matter and hair were found near Bonnet's body. Beer cans were found in the kitchen sink and in the trash can. According to the record, a note believed to be written by the killer was also found in Bonnet's apartment. Bonnet's car was located shortly thereafter in Cicero, Illinois. Stolen Illinois license plates were on the car.

Scientific testing was conducted on a beer can, cigarette butts found in Bonnet's apartment and car, the contents of the living room and kitchen wastebaskets, the severed telephone cord, and fingerprints found in the apartment and car. Prints belonging to Bonnet and Watson, as well as to other unidentified individuals, were found in Bonnet's apartment. Prints belonging to Bonnet and another unidentified individual were found in Bonnet's car. DNA on cigarette butts found both in the apartment and in the car were a match to Watson. A hair found on one of the towels located near Bonnet's body was from Watson; the other hair and the fecal matter were a match to Bonnet.

In addition, further investigation showed that Watson was originally from Cicero. The investigation revealed that Watson

had a relative that lived in Omaha "at some point" and that
Watson had visited Omaha in the fall of 1978.

Watson was charged in November 2010. Following a jury
trial, he was found guilty of first degree murder and use of
a weapon to commit a felony. Watson was sentenced to life
imprisonment plus 10 to 20 years' imprisonment. He appealed.
This court affirmed, holding that (1) the preindictment delay
of 33 years did not violate Watson's confrontation or due proc-
ess rights, (2) the evidence was sufficient to support the first
degree murder conviction, and (3) the prosecutor's comment
made during defense counsel's examination of a witness did
not necessitate a mistrial. A more complete recitation of the
facts surrounding Watson's conviction can be found in our
prior opinion.[2]

In March 2014, Watson filed a motion seeking postconvic-
tion relief. He alleged that his trial counsel was ineffective in
failing (1) to obtain a DNA expert, (2) to investigate another
suspect, (3) to file a motion to quash, (4) to object to the sec-
ond degree murder instruction, (5) to object to testimony by a
member of law enforcement, (6) to investigate a handwritten
note left at the scene, (7) to file a motion to suppress DNA
evidence, (8) to properly advise him during plea negotiations,
and (9) to obtain a fingerprint expert.

The district court dismissed Watson's motion without an
evidentiary hearing. Watson appeals.

ASSIGNMENT OF ERROR

On appeal, Watson assigns that the district court erred
in denying his motion for postconviction relief without a
hearing.

STANDARD OF REVIEW

In appeals from postconviction proceedings, an appellate
court reviews de novo a determination that the defendant

---

[2] Id.

failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.[3]

## ANALYSIS

[1,2] On appeal, Watson argues that the district court erred in denying his motion for postconviction relief without a hearing. Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable.[4] Thus, in a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable.[5]

[3,4] A court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution.[6] If a postconviction motion alleges only conclusions of fact or law, or if the records and files in the case affirmatively show that the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing.[7]

Watson's postconviction claims center on the alleged ineffective assistance provided by his trial counsel. That counsel represented Watson at trial and again on direct appeal; as such, Watson's claims in this postconviction proceeding are not procedurally barred.

---

[3] *State v. Sellers*, 290 Neb. 18, 858 N.W.2d 577 (2015).

[4] Neb. Rev. Stat. § 29-3001 (Reissue 2016).

[5] *State v. Starks*, 294 Neb. 361, 883 N.W.2d 310 (2016).

[6] *Id.*

[7] *Id.*

[5,6] A proper ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial.[8] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*,[9] the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.[10] To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different.[11] A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome.[12]

*DNA Expert.*

In Watson's motion for postconviction relief, he first alleged that his counsel was ineffective for failing to obtain a DNA expert to conduct independent DNA testing and analyze the State's results.

Watson identified a specific witness whom he alleged would have testified to the flaws in the State's evidence. And Watson identifies those flaws and how his expert would testify generally. But Watson does not allege how his expert would specifically testify with regard to the DNA profiles generated in this case or to the statistics generated for the profiles for which Watson could not be excluded as a contributor.

---

[8] *Id.*

[9] *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[10] *State v. Starks, supra* note 5.

[11] *Id.*

[12] *Id.*

The State directs us to *State v. Edwards*.[13] In *Edwards*, we found that the trial record affirmatively showed that defense counsel's strategies were reasonable in not retaining a DNA expert. We concluded that counsel in *Edwards* was reasonable in effectively cross-examining the State's witnesses to plant the seed of doubt in jurors' minds as to that evidence rather than call an expert to propose an "improbable theory."[14]

Counsel in this case extensively and thoroughly cross-examined the DNA experts who testified for the State. Given that Watson's allegations attack that testimony, but fail to allege his expert's own opinions on those same matters, we must conclude that Watson's allegations are insufficient to support the granting of postconviction relief.

There is no merit to Watson's first alleged basis for postconviction relief.

*Investigate Other Suspects.*

In his second allegation, Watson argued that his trial counsel was ineffective for failing to investigate other suspects, specifically George Kirby, primarily so that a DNA sample could be obtained from Kirby to compare to the results of the testing that was performed.

The district court noted that the record shows counsel attempted to locate these suspects, including Kirby, and was unable to do so such that these individuals were found to be unavailable. Evidence at trial showed that Kirby, at least, was deceased. And evidence at trial also showed that a DNA sample from Kirby had been obtained at the time of the original investigation.

We cannot conclude that counsel was deficient for failing to obtain something that had already been obtained—in this case, a DNA sample—or in failing to find witnesses who were later found to be unavailable.

---

[13] *State v. Edwards*, 284 Neb. 382, 821 N.W.2d 680 (2012).

[14] *Id.* at 412, 821 N.W.2d at 705.

The district court was correct in concluding that Watson's second allegation was without merit.

*Motion to Quash.*

In his third allegation, Watson contended that his trial counsel was ineffective in failing to file a motion to quash. Watson contended that the information filed against him charged a violation of first degree murder under Neb. Rev. Stat. § 28-303 (Reissue 1979), when he should have been charged under Neb. Rev. Stat. § 28-401 (Reissue 1975).

In rejecting this allegation, the district court noted that the language setting forth the elements of first degree murder was identical in both § 28-303 and § 28-401 and that this language was used in the information charging Watson with first degree murder. As such, the district court concluded that Watson suffered no prejudice.

The district court did not err in finding this allegation to be without merit. For the reasons the court noted, Watson was given notice of the elements of the charged crime and could not have been prejudiced by an error in the statutory citation.

More importantly, however, the information's statutory citation was not erroneous. Bonnet was killed in October 1978. Nebraska's criminal code was revamped in 1977, with an operative date of July 1, 1978.[15] As of the date this crime was committed, the relevant citation was, as it is today, § 28-303. Because any motion to quash would have been denied, we cannot find that counsel was deficient for failing to file one.

*Second Degree Murder Instructions.*

In his fourth allegation, Watson contended that the instructions at his trial defining second degree murder were incorrect. Specifically, Watson contended that counsel was ineffective for failing to object to the omission of the term "malice."

---

[15] See 1977 Neb. Laws, L.B. 38, § 325.

[7,8] As we have found previously, malice is not an element of second degree murder.[16] Moreover, any error in his second degree murder instructions would not have prejudiced Watson, because he was convicted of first degree murder pursuant to a step instruction. We noted in *State v. Alarcon-Chavez*,[17] that "a defendant convicted of first degree murder under a step instruction cannot be prejudiced by any error in the instructions on second degree murder or manslaughter because under the step instruction, the jury would not have reached those levels of homicide."

Accordingly, the district court did not err in finding Watson's fourth allegation in his postconviction motion to be without merit.

*Law Enforcement Testimony.*

In his fifth allegation, Watson argued that his counsel was ineffective for failing to object to law enforcement testimony regarding a description given to police of a person seen with Bonnet in the days prior to his death and to that officer's testimony that this description matched a photograph of Watson.

But Watson failed to allege how he was prejudiced by this testimony. Given that Watson's fingerprint and DNA were found in Bonnet's apartment and car, the jury was aware that Bonnet and Watson were acquainted. Thus, no prejudice could have resulted from testimony placing Bonnet and Watson together in the days prior to Bonnet's death.

There is no merit to Watson's fifth allegation.

*Investigate Handwritten Note*
*Left in Bonnet's Apartment.*

In his sixth allegation, Watson argued that counsel was ineffective in various particulars with respect to a note, apparently

---

[16] See *State v. Smith*, 294 Neb. 311, 883 N.W.2d 299 (2016).

[17] *State v. Alarcon-Chavez*, 284 Neb. 322, 335, 821 N.W.2d 359, 368 (2012).

left by Bonnet's killer, found in Bonnet's apartment. Watson contended that counsel failed to obtain a copy of the report prepared by the U.S. Secret Service regarding handwriting analysis on the note, because those test results would show either that Watson wrote the note or that he did not. Watson stated that this was particularly important because the note had been lost.

The district court rejected this allegation, contending that Watson was not a suspect at the time the note was originally tested and that thus, the handwriting analysis would be irrelevant as to him. The district court also observed that because the original note no longer existed, it would not be possible to conduct further testing on it.

The district court did not err. It was correct in holding that since the note is now missing, further testing would not be possible, and also that the results are not relevant to Watson, because his handwriting was not a subject of the report. Moreover, there is at least some evidence in the record to suggest that counsel did, in fact, have a copy of the report in question, because counsel referred to it and had a law enforcement witness read from it during cross-examination. For these reasons, we cannot conclude that counsel was deficient. There was no merit to Watson's sixth allegation.

*Motion to Suppress DNA Evidence.*

In his seventh allegation, Watson contended that his counsel was ineffective in failing to file a motion to suppress DNA evidence due to the lack of a chain of custody and the storage of physical evidence.

[9,10] Watson's concern is with the chain of custody and the storage of some of the physical evidence offered against him. But motions to suppress are designed to remedy unlawful acts, such as an unconstitutional search and seizure.[18]

---

[18] Neb. Rev. Stat. § 29-822 (Reissue 2016).

We held in *State v. Bradley*[19] that assertions concerning the chain of custody go to the weight to be given to the evidence presented rather than to the admissibility of that evidence. A review of the record shows that counsel consistently challenged the physical evidence collected at the time of the murder on the basis of the storage of such items.

Counsel was not deficient in failing to file a motion to suppress, because the filing of a motion to suppress would have been inappropriate in this case. The district court did not err in concluding that Watson's seventh allegation was without merit.

*Attorney's Advisement Regarding*
*Plea Agreement.*

In his eighth allegation, Watson argued that his counsel provided ineffective assistance in his advisement regarding the State's plea offer. According to Watson, the State offered to let him plead guilty to manslaughter. Counsel informed Watson that the maximum sentence for manslaughter was 20 years' imprisonment; Watson now claims that counsel was ineffective, because the maximum sentence was actually 10 years' imprisonment.

For the same reasons there was no error with respect to Watson's allegations regarding the motion to quash, there was no merit to this allegation. Prior to July 1, 1978, the maximum punishment for manslaughter was 10 years.[20] At the time of Bonnet's death in October 1978, manslaughter was a Class III felony[21] with a maximum punishment of 20 years' imprisonment.[22] Counsel's advisement of 20 years' imprisonment was therefore correct and not deficient.

---

[19] See *State v. Bradley*, 236 Neb. 371, 461 N.W.2d 524 (1990).

[20] Neb. Rev. Stat. § 28-403 (Reissue 1975).

[21] Neb. Rev. Stat. § 28-305 (Reissue 1979).

[22] Neb. Rev. Stat. § 28-105 (Reissue 1979).

*Fingerprint Expert.*

In his ninth allegation, Watson contended that his counsel was ineffective in failing to call a fingerprint expert to refute the evidence presented by the State.

In his motion and supplemental facts, Watson directed the district court to what he perceived to be weaknesses in the fingerprint evidence presented by the State and argued that his counsel should have retained a separate expert. But Watson did not allege who that expert would be or, more importantly, what that expert's testimony would be. As such, Watson's allegations are insufficient to support the granting of postconviction relief. Moreover, defense counsel did cross-examine the State's witnesses with respect to weaknesses in their testimonies, thus revealing such potential weaknesses to the jury.

The district court was correct in finding that Watson's ninth and final allegation was without merit.

## CONCLUSION

The decision of the district court denying postconviction relief is affirmed.

Affirmed.