IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. RUSSELL

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DARNELL L. RUSSELL, APPELLANT.

Filed November 6, 2018.    No. A-17-881.

Appeal from the District Court for Douglas County: GARY B. RANDALL, Judge. Affirmed.

Gerald L. Soucie for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Darnell L. Russell was convicted of criminal conspiracy to commit unlawful possession with intent to deliver a controlled substance (crack cocaine). Following an unsuccessful direct appeal, he sought postconviction relief claiming his trial counsel was ineffective for failing to file a motion to suppress evidence obtained through a wiretap on his telephone. Russell appeals from an order entered by the Douglas County District Court which denied his request for postconviction relief without an evidentiary hearing. We affirm.

## II. BACKGROUND

### 1. TRIAL AND DIRECT APPEAL

In Russell's direct appeal, the Nebraska Supreme Court described the circumstances leading to Russell's arrest, stating:

The Greater Omaha Safe Streets Task Force is a coalition of local, state, and federal law enforcement agencies that conducts long-term investigations related to narcotics and violent crime. In the summer of 2012, the task force began an operation to investigate the distribution of crack cocaine in Omaha, Nebraska. Approximately 15 people were targeted during the investigation, 8 of whom were ultimately arrested, including Russell.

Russell was charged with conspiracy to commit unlawful possession with intent to deliver a controlled substance, crack cocaine, under Neb. Rev. Stat. § 28-202 (Reissue 2008), a Class IB felony.

*State v. Russell*, 292 Neb. 501, 503, 874 N.W.2d 8, 12 (2016). As relevant here, the Supreme Court summarized the evidence from trial as follows:

The evidence at trial established that the task force utilized wiretaps, controlled buys, surveillance, and other investigatory techniques to identify various persons in a crack cocaine distribution chain. Briefly stated, officers began the investigation by using a confidential informant to conduct a number of controlled buys from two street-level dealers, which in turn provided the necessary probable cause for officers to obtain warrants to intercept calls and text messages to and from the cell phones of those street-level dealers. Using the information gleaned from those intercepts, officers conducted physical surveillance and were able to identify Russell as the supplier for both of the street-level dealers. At that point, law enforcement obtained a warrant to intercept calls and text messages from Russell's cell phone as well, which led officers up the distribution chain to Russell's supplier.

*Id*. at 505, 874 N.W.2d at 13.

A jury found Russell guilty of conspiracy to commit unlawful possession with intent to deliver 140 grams or more of crack cocaine. The district court sentenced Russell to 20 to 25 years' imprisonment. On direct appeal, Russell challenged the admissibility of the testimony of a law enforcement officer and an informant, the classification of the felony, and the sentence imposed. The Nebraska Supreme Court affirmed Russell's conviction and sentence on January 15, 2016; the mandate issued on January 29. See *State v. Russell, supra*.

2. POSTCONVICTION PROCEEDINGS

(a) Russell's Motion for Postconviction Relief

On January 30, 2017, Russell filed a "Verified Motion for Postconviction Relief," pursuant to the Nebraska Postconviction Act, Neb. Rev. Stat. § 29-3001 et seq. (Reissue 2016), claiming ineffective assistance of trial counsel. Issuance of a mandate by a Nebraska appellate court is the date the judgment of conviction becomes final for purposes of the 1-year time limitation to file a verified motion for postconviction relief pursuant to § 29-3001(4)(a). See *State v. Huggins*, 291 Neb. 443, 866 N.W.2d 80 (2015). One year from mandate would have been January 29, but since that was a Sunday, Russell's motion was timely when filed the following day.

Russell's postconviction motion alleged that at trial, the State "relied extensively on a wiretap" placed on his telephone number. He asserted that the principle evidence used against him

at trial "consisted of intercepted phone calls and text messages" obtained pursuant to a court-ordered wiretap. According to Russell's motion, trial exhibits 22 through 28 contained a number of telephone calls recorded from the intercepts of Russell's telephone from November 2012 to February 2013 (total of 46 telephone calls). No objection was made by Russell's counsel when these recordings were offered.

Russell alleged that the State's application for the wiretap of his telephone number (Application) "relied exclusively on intercepted communications from an earlier wiretap on [two other targeted telephone numbers]" from November 7 to December 6, 2012; the wiretap against Russell's telephone number was issued around December 21. Russell claimed that "[t]he application for the warrant against [the other two targeted telephone numbers] was attached to his [Application] as Attachment '1'" (Attachment 1).

Russell's motion claimed:
The results of the intercepts obtained through "Attachment 1" were then used in the [Application]. Paragraphs 48 thru 72 relied on the results the communications and text messages intercepted as a result of the order granted based on "Attachment 1" a month earlier. There is simply no probable cause contained in [the Application] without paragraphs 48 thru 72.

. . . The invalidity of [the] wiretap obtained through "Attachment 1" is central to the motion to suppress that should have been filed. Without the illegally obtained information obtained through "Attachment 1", there was no evidence upon which the wiretap on [Russell's] phone could lawfully be issued.

Russell described the content of paragraphs 1 through 126 allegedly set forth in Attachment 1. In reviewing Russell's description, we see a number of instances of "a controlled buy" of crack cocaine from several individuals; one of the individuals selling the crack cocaine was a target of a wiretap sought in Attachment 1. Russell claimed that Attachment 1 was "defective and insufficient." Russell asserted that law enforcement claimed (in Attachment 1) that other methods had failed to identify sources of crack cocaine "up the distribution chain"; methods such as confidential informants, undercover officers, controlled buys, surveillance, pen registers, "public assistance and broadcast," search warrants, and trash searches. Russell alleged that law enforcement's claim in this regard was "inaccurate" and "self-serving." Russell suggested other ways in which law enforcement could have obtained information short of wiretaps. Russell complains that trial counsel did not seek to depose the affiant of Attachment 1 and the primary investigating officer "to further develop the facts as evidentiary support for a motion to suppress the wiretaps." We note that Russell did not include Attachment 1 with his postconviction motion, although as indicated, he described the content of each paragraph allegedly contained in that document. We also note that Russell did not attach the Application (for the wiretap of his telephone) to his motion, and unlike his description of each paragraph contained in Attachment 1, Russell did not describe the content of any of the paragraphs contained in the Application. He only generally asserted that paragraphs 48 through 72 of the Application relied on communications and text messages intercepted as a result of the wiretap obtained with Attachment 1.

Russell's motion claimed his trial counsel provided deficient performance by "failing to properly investigate, research, prepare, file, and conduct an evidentiary hearing on the issue of the wiretaps of phone conversations and text messages" obtained in violation of Neb. Rev. Stat. §§ 86-271 to 86-296 (Reissue 2014) [intercepted communications] and the 4th and 14th Amendments to the U.S. Constitution. Russell asserted that trial counsel failed to file a motion to suppress and failed to make proper objections at trial, thereby failing to properly preserve the issue of the inadmissibility of the wiretap evidence on appeal. He claimed a motion to suppress "would likely have been granted, either at trial or on appeal," and that "[t]he impact of the wiretapped oral and text messages was highly prejudicial to [Russell] at [the] time of trial."

(b) Russell's Motion for Depositions and Discovery

Russell also filed a "Motion for Depositions of Witnesses and Discovery of Documents in Possession of Douglas County," requesting the court grant him leave to conduct discovery. He requested the State produce all reports, documents, and items about the investigation that provided information for Attachment 1 and the Application.

(c) State's Response and Motion to Dismiss

The State filed a "Response and Motion to Dismiss Defendant's Motion for Postconviction," generally arguing that Russell's postconviction motion set forth insufficient facts and legal arguments. To refute Russell's assertion that a motion to suppress the Application would likely have been granted, the State argued, in essence, that "persuasive Legal Authority" showed that state and federal courts had already reviewed and overruled motions to suppress Attachment 1 in separate cases involving the targeted telephone numbers for the wiretaps sought in Attachment 1. In response to the State's motion to dismiss, Russell claimed the state and federal pretrial orders in other court proceedings were outside the record of this case, and argued that he was neither a party to nor were his interests represented by an attorney in those other proceedings. At the hearing on the State's motion to dismiss Russell's postconviction motion, there was discussion of whether the district court could rely on the pretrial orders from other court proceedings. Over Russell's objection, the court received such orders as exhibits 1, 2, and 3 "solely for legal authority in support of the State's argument."

(d) District Court's Ruling

On July 31, 2017, the district court entered an order denying Russell's motion for postconviction relief without an evidentiary hearing. The district court aptly summed up Russell's request for postconviction relief as "one argument . . . that trial counsel was ineffective in failing to file a motion to suppress." The district court denied Russell's postconviction motion for two reasons: (1) Russell failed to state sufficient facts or any legal basis to establish how a suppression motion would have been successful or how suppression would have changed the outcome of the case, and (2) the records and files of the case, along with legal authority, establish that a suppression motion would have been unsuccessful if filed, and counsel cannot be ineffective for failing to raise an argument that has no merit.

The district court determined that Russell's challenge to the wiretaps was based on (1) the lack of probable cause for Attachment 1 and (2) the lack of exhaustion of investigative techniques in order to get Attachment 1. The district court set forth the legal authority for obtaining a wiretap, both as to probable cause and as to the necessity/exhaustion requirement under Nebraska law. The district court also summarized a history of the other cases in which the suppression of Attachment 1 was sought. And the court set forth findings from the state and federal court orders in those other cases which overruled those motions to suppress. The court stated,

> Taking into consideration the orders mentioned above for legal authority only, this Court finds that should [Russell's] trial counsel have brought a motion to suppress "Attachment 1," as argued by [Russell], the suppression would have been overruled. Because the suppression would have been overruled, trial counsel was not deficient in failing to bring such motion. . . . Because the suppression would have been overruled, it would not have changed the outcome of the trial and therefore, the record also refutes that [Russell] suffered any prejudice by counsel failing to file a motion to suppress.

Accordingly, the district court concluded that Russell's motion for postconviction relief should be denied without an evidentiary hearing. Russell appeals.

## III. ASSIGNMENTS OF ERROR

Reordered and restated, Russell assigns the district court erred by (1) failing to grant an evidentiary hearing, and failing to allow Russell to conduct discovery before such hearing, and (2) receiving and relying on pretrial orders from other state and federal court proceedings which were not part of the files and record for Russell's case.

## IV. STANDARD OF REVIEW

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Foster*, 300 Neb. 883, 916 N.W.2d 562 (2018).

## V. ANALYSIS

### 1. POSTCONVICTION LEGAL PRINCIPLES

Although a motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, when a defendant was represented both at trial and on direct appeal by the same lawyer, the defendant's first opportunity to assert ineffective assistance of counsel is in a motion for postconviction relief. *State v. McKinney*, 279 Neb. 297, 777 N.W.2d 555 (2010). Russell was represented by the same court-appointed attorney for his trial and direct appeal. Therefore, this postconviction motion is his first opportunity to raise claims based on ineffective assistance of counsel.

The Nebraska Postconviction Act provides that postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his constitutional rights such that the judgment was void or voidable. *State v.*

*Phelps*, 286 Neb. 89, 834 N.W.2d 786 (2013). In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable. *State v. Phelps, supra*.

In a postconviction proceeding, an evidentiary hearing is not required (1) when the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights; (2) when the motion alleges only conclusions of fact or law; or (3) when the records and files affirmatively show that the defendant is entitled to no relief. *State v. Stricklin*, 300 Neb. 794, 916 N.W.2d 413 (2018).

In order to establish a right to postconviction relief based on a claim of ineffective counsel, a defendant has the burden to first show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. *State v. Williams*, 259 Neb. 234, 609 N.W.2d 313 (2000). Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. *Id.* In order to establish a right to postconviction relief based on a claim of ineffective counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.*

The two-prong test for an ineffective assistance of counsel claim need not be addressed in order. *Id.* In determining whether a trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably. *Id.*

### 2. FAILING TO ALLOW DISCOVERY AND
### GRANT EVIDENTIARY HEARING

Russell claims his motion for postconviction relief was "factually specific, non-conclusory, and identified the facts outside the current record that if proven, would entitle him to postconviction relief." Brief for appellant at 28. He claims, therefore, that he should be allowed to proceed through discovery and have an evidentiary hearing. However, the State contends that Russell's postconviction claim fails to state sufficient facts or any legal basis to establish how a suppression motion would have been successful, and therefore no evidentiary hearing was warranted. The State correctly points out that Russell had the burden to allege facts which, if proved, constitute a denial or violation of his constitutional rights, causing the judgment against him to be void or voidable. We agree with the State that Russell failed to sufficiently allege facts to meet that burden; his postconviction motion alleges only conclusions of fact or law. When considering Russell's allegations, we see only broad assertions that if a motion to suppress the evidence obtained from the wiretap of his telephone had been filed, it would have been granted. He supports this assertion only by generally alleging that paragraphs 48 through 72 of his Application relied upon communications obtained as a result of illegal wiretaps to two other targeted telephones.

As indicated earlier, Russell did not include a copy of the Application with his postconviction motion. Instead, Russell merely alleged that information from paragraphs 48 through 72 of the Application was the sole basis for probable cause to wiretap his telephone, and the information contained in those paragraphs came from communications obtained through

wiretaps of other telephones which he claims were illegally obtained. Russell does not describe the content of paragraphs 48 through 72 of the Application. Rather, he asserts that without those particular paragraphs, "[t]here is simply no probable cause contained in [Russell's] wiretap application." However, even if the content of paragraphs 48 through 72 of the Application were obtained through an unlawful wiretap of the other two targeted telephone numbers, Russell failed to include any sufficient factual allegations to dispel the notion that the Application's remaining content (paragraphs numbered 1-47, for example), failed to provide sufficient probable cause to authorize a wiretap of his telephone. Russell's postconviction motion lacks even a general reference to the rest of the Application's content. While Russell provided a description for each of the 126 paragraphs contained in Attachment 1 (the application to wiretap the other two targeted telephones), he failed to provide any description of the content of the Application to wiretap his own telephone. The absence of specific information about his Application is problematic; his claim that there "is simply no probable cause" contained in the Application without paragraphs 48 through 72 is not sufficient to show a constitutional violation.

We are mindful of Russell's assertion that the "[Application], affidavit, Attachment '1', and facts that would support a *Franks v. Delaware*[, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978),] hearing [to establish probable cause for the wiretap] were not made part of the files and records" of his case because trial counsel did not file a motion to suppress the wiretap evidence. Brief for appellant at 22. In his postconviction motion, Russell claimed his trial counsel was given a copy of the Application and its supporting documentation, including Attachment 1. Russell asserted that he personally received some, but not all, of the documents provided by the State during discovery, but that he did not believe his trial counsel provided him Attachment 1, which his postconviction counsel allegedly only recently obtained along with other "additional documents." There is no explicit allegation in Russell's postconviction motion to suggest that he did not personally receive the Application from trial counsel or postconviction counsel.

It is also clear that Attachment 1 was in Russell's postconviction counsel's possession, however, Russell asserts in his motion that his postconviction counsel purportedly did not believe he could "legally or ethically underlined unilaterally disclose the specific information in 'Attachment 1' to [Russell] without further guidance from the court and an opportunity for the prosecuting authorities to state a position on the matter." (Emphasis in original.) After indicating that Russell's postconviction counsel reviewed Attachment 1 and that it "contains allegations about informants, cooperating individuals, undercover officers and other matters," the motion states that disclosure of such information to Russell "might be of concern to the prosecuting authorities," citing Neb. Rev. Stat. § 29-1912(4) (Reissue 2016). Section 29-1912 allows a defendant to request a court order to inspect and make copies of evidence, but whenever a prosecuting attorney believes granting an order under this statute will result in the possibility of bodily harm to witnesses or that witnesses will be coerced, the prosecutor can submit a written statement to be inspected by the court alone. See § 29-1912(4). Apparently Russell's reference to this statute is to explain, in part, his reluctance to include Attachment 1 with his postconviction motion.

However, the State correctly notes that Russell "could have redacted [sensitive] information or otherwise modified that information to eliminate that concern." Brief for appellee at 9; see *State v. Starks*, 294 Neb. 361, 883 N.W.2d 310 (2016) (only relevant portion of report

was attached to defendant's postconviction motion). Or Russell could have asked the district court to seal the documents. Instead, Russell's approach for seeking postconviction relief lacked inclusion, in whole or in part, of a copy of the Application or Attachment 1, both of which are at the core of Russell's postconviction argument. The effect is that there is no further information on which this court may determine the sufficiency of his postconviction motion other than Russell's allegations about the supposed content of these documents. See § 29-3001 (indicating court is to evaluate "the [verified postconviction] motion and the files and records of the case" in its determination of whether to grant hearing).

Although Russell and/or his postconviction counsel were in possession of the Application and Attachment 1, Russell argues on appeal that he was not entitled to include those documents in his postconviction motion. He claims, "[Russell] is no more entitled to offer documents in his motion that are outside the current record, tha[n] the State should be allowed to offer documents on behalf of a motion to dismiss . . . ." Brief for appellant at 30. He claims that the "'evidence' to be considered by the district court must be made on the record with counsel for both sides present." *Id.*

However, as asserted by the State, prior case law demonstrates that attaching relevant documents to a postconviction motion has been an accepted practice. See, for example, *State v. Starks,* 294 Neb. at 365, 883 N.W.2d at 315 (postconviction motion denied without evidentiary hearing; defendant claimed that "years after the trial" he came into possession of a report wherein a police crime laboratory technician's statement showed one of the State's witnesses lied; the Nebraska Supreme Court noted that "[t]he relevant portion of the report was attached to [the defendant's] postconviction motion"; Supreme Court considered report when concluding district court properly rejected defendant's postconviction claim); *State v. McHenry*, 268 Neb. 219, 226, 682 N.W.2d 212, 220 (2004) (postconviction motion denied without evidentiary hearing; defendant "attached a copy of a private pathologist's letter . . . as an exhibit to his postconviction motion" and alleged that prior to his trial, his trial counsel had received that letter which cast doubt on State's expert testimony; attached letter considered by Nebraska Supreme Court in rejecting defendant's claim that trial counsel was ineffective for failing to investigate defense of alcohol poisoning).

Russell could have attached documents to his postconviction motion, including a redacted or sealed Application and Attachment 1, but chose not to do so. However, even if Russell had included a copy of his Application and Attachment 1 with his postconviction motion, his allegations nevertheless fall short of stating a constitutional violation. Russell fails to provide any legal basis for why his Application was unlawful if paragraphs 48 through 72 were excluded. Further, he fails to provide any legal basis for how he can challenge the legality of the wiretaps on the other two targeted telephones. As pointed out by the State, Russell failed to allege sufficient facts to show that Russell had standing to challenge Attachment 1; although we note that at oral argument, Russell's counsel suggested that Russell had standing to challenge telephone calls he made which were intercepted as a result of the wiretaps on the other targeted telephones. However, we need not analyze Russell's standing to challenge Attachment 1 because, based on our foregoing analysis, Russell's allegations in his postconviction motion regarding his own Application are insufficient.

Additionally, as the State asserts, Russell's postconviction motion is also problematic because Russell does not connect the alleged deficiencies in the Application to explain the basis of his ineffective assistance of counsel claim beyond a brief assertion that "[a] properly filed motion to suppress would likely have been granted, either at trial or on appeal." Even if Russell had provided sufficient factual allegations in his postconviction motion, his motion fails to sufficiently state any legal basis to establish how a motion to suppress the Application would have been successful.

The allegations in a motion for postconviction relief must be sufficiently specific for the district court to make a preliminary determination as to whether an evidentiary hearing is justified. See *State v. Haynes*, 299 Neb. 249, 908 N.W.2d 40 (2018). And in the absence of alleged facts that would render the judgment void or voidable, the proper course is to dismiss the motion for postconviction relief for failure to state a claim. See *id*.

We find conclusory (1) Russell's factual allegation that the Application lacked probable cause, and (2) his legal allegation that a motion to suppress would likely have been granted. Accordingly, his postconviction motion was insufficient to warrant an evidentiary hearing. See *State v. Stricklin*, 300 Neb. 794, 916 N.W.2d 413 (2018) (evidentiary hearing is not required when motion alleges only conclusions of fact or law). We therefore conclude, on the face of the postconviction motion alone, that the district court did not err when it denied an evidentiary hearing on the ground that Russell failed to set forth sufficient facts to warrant such a hearing.

Given our decision on this issue, it follows that the district court did not err in denying Russell the ability to conduct discovery for a hearing to which he was not entitled.

### 3. PRETRIAL ORDERS FROM OTHER COURT PROCEEDINGS

Russell claims the district court erred in receiving and relying on pretrial orders (exhibits 1 through 3) from other court proceedings because they were not part of the files and record in Russell's case, they were not final or subject to appellate review, and two of the orders did not exist at the time of Russell's original trial and direct appeal. However, because we have concluded that Russell's allegations in his postconviction motion were by themselves insufficient to demonstrate a violation of his constitutional rights, we need not address whether the district court erred by receiving exhibits 1 through 3 "for legal authority only." See *State v. Nolt*, 298 Neb. 910, 906 N.W.2d 309 (2018) (appellate court is not obligated to engage in analysis that is not necessary to adjudicate case and controversy before it).

### VI. CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Russell's motion for postconviction relief without an evidentiary hearing.

AFFIRMED.