Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/23/2018 09:14 AM CST

STATE OF NEBRASKA, APPELLEE, V.
JASON WILLIAM CUSTER, APPELLANT.
___ N.W.2d ___

Filed December 1, 2017.    No. S-16-1196.

1. **Postconviction: Constitutional Law: Appeal and Error.** In appeals
   from postconviction proceedings, an appellate court reviews de novo
   a determination that the defendant failed to allege sufficient facts to
   demonstrate a violation of his or her constitutional rights or that the
   record and files affirmatively show that the defendant is entitled to
   no relief.
2. **Postconviction: Proof: Appeal and Error.** A defendant requesting
   postconviction relief must establish the basis for such relief, and the
   findings of the district court will not be disturbed unless they are
   clearly erroneous.
3. **Postconviction: Constitutional Law.** Postconviction relief is available
   to a prisoner in custody under sentence who seeks to be released on the
   ground that there was a denial or infringement of his or her constitu-
   tional rights such that the judgment was void or voidable.
4. **Postconviction: Constitutional Law: Proof.** In a motion for postcon-
   viction relief, the defendant must allege facts which, if proved, consti-
   tute a denial or violation of his or her rights under the U.S. or Nebraska
   Constitution, causing the judgment against the defendant to be void
   or voidable.
5. **Postconviction: Proof.** If a postconviction motion alleges only conclu-
   sions of fact or law, or if the records and files in the case affirmatively
   show that the defendant is entitled to no relief, the court is not required
   to grant an evidentiary hearing.
6. **Effectiveness of Counsel: Proof: Words and Phrases: Appeal and
   Error.** To prevail on a claim of ineffective assistance of counsel under
   *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed.
   2d 674 (1984), the defendant must show that his or her counsel's per-
   formance was deficient and that this deficient performance actually

prejudiced the defendant's defense. To show prejudice under the preju-
dice component of the *Strickland* test, the defendant must demonstrate
a reasonable probability that but for his or her counsel's deficient per-
formance, the result of the proceeding would have been different. A rea-
sonable probability does not require that it be more likely than not that
the deficient performance altered the outcome of the case; rather, the
defendant must show a probability sufficient to undermine confidence in
the outcome.

7. **Rules of the Supreme Court: Trial: Attorneys at Law.** The Nebraska
Rules of Professional Conduct set forth that a lawyer shall not, in trial,
state a personal opinion as to the credibility of a witness or the guilt or
innocence of an accused.

8. **Trial: Prosecuting Attorneys.** When a prosecutor's comments rest on
reasonably drawn inferences from the evidence, the prosecutor is per-
mitted to present a spirited summation that a defense theory is illogical
or unsupported by the evidence and to highlight the relative believability
of witnesses for the State and the defense.

9. ____: ____. In cases where a prosecutor comments on the theory of
defense, the defendant's veracity, or the defendant's guilt, the prosecutor
crosses the line into misconduct only if the prosecutor's comments are
expressions of the prosecutor's personal beliefs rather than a summation
of the evidence.

10. **Trial: Prosecuting Attorneys: Appeal and Error.** In assessing whether
a prosecutor's statements were misconduct, an appellate court looks
at the entire context of the language used to determine whether the
prosecutor was expressing a personal opinion or merely submitting to
the jury a conclusion that the prosecutor is arguing can be drawn from
the evidence.

11. **Postconviction: Appeal and Error.** An appellate court will not consider
as an assignment of error a question not presented to the district court
for disposition through a defendant's motion for postconviction relief.

12. **Postconviction: Right to Counsel.** There is no federal or state constitu-
tional right to an attorney in state postconviction proceedings.

13. ____: ____. Under the Nebraska Postconviction Act, it is within the
discretion of the trial court as to whether counsel shall be appointed to
represent the defendant.

14. **Postconviction: Justiciable Issues: Right to Counsel: Appeal and
Error.** Where the assigned errors in the postconviction petition before
the district court are either procedurally barred or without merit, estab-
lishing that the postconviction action contained no justiciable issue of
law or fact, it is not an abuse of discretion to fail to appoint appellate
counsel for an indigent defendant.

Appeal from the District Court for Cheyenne County: Derek C. Weimer, Judge. Affirmed.

Jason William Custer, pro se.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Heavican, C.J.

## I. INTRODUCTION

Jason William Custer appeals from the district court's denial, without an evidentiary hearing, of his motion for postconviction relief. Custer proceeds pro se in his postconviction motion. We affirm.

## II. BACKGROUND

The facts of this case can be found in this court's opinion on direct appeal, *State v. Custer*.[1] The following facts from the direct appeal opinion are pertinent to our decision on Custer's postconviction motion.

> On or around October 20, 2012, [Adam] McCormick came to the apartment where Custer and [Billy] Fields were staying to collect the money [that Custer owed McCormick]. After Custer told McCormick he would pay him from his next check, Fields, who was upset that McCormick had come to confront Custer, told McCormick that he would pay McCormick by the end of the week. In the following days, McCormick exchanged threatening text messages and telephone calls with Custer and Fields.
>
> On or about October 26, 2012, . . . McCormick confronted [Custer and Fields], demanding his money. Fields testified that when McCormick approached them, it

---

[1] *State v. Custer*, 292 Neb. 88, 871 N.W.2d 243 (2015).

looked like McCormick was reaching into his pocket for something, and that Fields thought it was a knife that he knew McCormick carried. Custer and Fields told McCormick they could not repay the $150 at that time, but in order to calm McCormick, Fields paid him $40 for another debt he owed. . . .

A few days later, on November 1, 2012, McCormick sent Fields text messages threatening physical violence if the debt was not repaid soon. The text messages prompted Custer to arrange with McCormick to meet in a park for a fight. Custer and Fields went to the park at the arranged time. McCormick did not show up, but he continued to exchange confrontational text messages and telephone calls with Custer and Fields.

. . . .

The next night, November 2, 2012, [McCormick was at a gathering at Syrus Leal's house]. . . . Throughout the evening, [Fields' girlfriend] updated Custer and Fields through text messages and telephone calls regarding McCormick's activities and whereabouts. Around 11:20 p.m., Custer responded . . . with a text message stating that he and Fields were coming over to handle matters with McCormick.

. . . Around 11:35 p.m., Custer asked McCormick [via text] whether they could "FINISH THIS RIGHT NOW ONE ON ONE." McCormick responded in the affirmative . . . .

Shortly after midnight on November 3, 2012, [Custer learned that] McCormick was leaving the gathering at Leal's house. Custer borrowed Fields' truck to drive to Leal's house. . . . Thereafter, an incident ensued in which Custer shot McCormick twice.[2]

Following the shooting, Custer was charged with first degree murder, a Class IA felony; use of a firearm to commit

---

[2] *Id.* at 92-94, 871 N.W.2d at 250-52.

a felony, a Class IC felony; and possession of a firearm by a prohibited person, a Class ID felony. On January 31, 2014, the jury found Custer guilty on all three counts. The court sentenced Custer to life imprisonment for first degree murder, to 20 to 50 years' imprisonment for use of a firearm to commit a felony, and to 10 to 20 years' imprisonment for being a felon in possession of a firearm. The court ordered that the sentences be served consecutively. Custer appealed his convictions and sentences. This court affirmed Custer's convictions and affirmed his sentences as modified.[3]

On May 10, 2016, Custer filed a motion for postconviction relief, a motion for permission to proceed in forma pauperis, and a motion for appointment of counsel. The State filed a motion to dismiss Custer's motion for postconviction relief without conducting an evidentiary hearing, and on November 22, 2016, the district court overruled Custer's motion for postconviction relief without an evidentiary hearing. Custer appeals.

## III. ASSIGNMENTS OF ERROR

Custer assigns, restated, that the district court erred in denying his motion for postconviction relief, because counsel was ineffective when counsel (1) "illicited testimony from Dr. Peter Schilke on information that was not in evidence [and] information that he was not the originating expert on"; (2) "insisted that a key state witness was testifying falsely to information supported by the record and critical to [Custer's] self-defense defense"; (3) cross-examined a patrol officer; (4) "failed to call rebuttal witness, a fellow law partner, Kelly Breen, to the stand"; (5) "failed to object at critical junctures throughout the entirety of the trial"; and (6) failed to ensure that "the court provided proper jury instructions, or a proper verdict form to all jurors, and omitted critical instruction on self-defense, assault, terroristic threats and other omissions."

---

[3] See *State v. Custer, supra* note 1.

Custer also assigns that the district court erred in denying his motion for appointment of counsel.

## IV. STANDARD OF REVIEW

[1,2] In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.[4] A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous.[5]

## V. ANALYSIS

On appeal, Custer argues that his trial counsel was ineffective in various particulars and that the district court erred in denying his motion for postconviction relief without a hearing.

[3-5] Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable.[6] Thus, in a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable.[7] If a postconviction motion alleges only conclusions of fact or law, or if the records and files in the case affirmatively show that the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing.[8]

---

[4] *State v. Watson*, 295 Neb. 802, 891 N.W.2d 322 (2017).

[5] *State v. Starks*, 294 Neb. 361, 883 N.W.2d 310 (2016).

[6] Neb. Rev. Stat. § 29-3001(1) (Reissue 2016).

[7] *State v. Starks, supra* note 5.

[8] *State v. Phelps*, 286 Neb. 89, 834 N.W.2d 786 (2013).

### 1. Ineffective Assistance
### of Counsel

[6] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*,[9] the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.[10] To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different.[11] A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome.[12]

### (a) Testimony From
### Dr. Peter Schilke

Custer argues that the district court erred in denying an evidentiary hearing on the ground that counsel rendered ineffective assistance when cross-examining Dr. Peter Schilke. Schilke was a witness for the State and a pathologist. Schilke performed McCormick's autopsy, during which he obtained fluids for a toxicology panel. Those samples were sent to a toxicologist for testing.

Custer takes issue with the following question posed by counsel during cross-examination of Schilke:

> Q. . . . [I]n [the toxicologist's] findings, he said that blood levels of 200 ng to 600 ng had been reported in methamphetamine abusers who exhibited violent and irrational behavior. Now I realize [McCormick's] level

---

[9] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[10] *State v. Watson, supra* note 4.

[11] *Id.*

[12] *Id.*

wasn't as high as 200 to 600 but what I guess I am asking you is it, in your experience that methamphetamine users can exhibit violent and irrational behavior?

A. Sure, that has been reported.

Custer argues that counsel erred in drawing the jury's attention to the fact that the level of methamphetamine in McCormick's system was lower than levels that had reportedly caused "violent and irrational behavior."

Custer relied on a theory of self-defense at trial. The testimony elicited by counsel demonstrated that McCormick had levels of methamphetamine in his system. Schilke's testimony supported the conclusion that levels did not have to be as high as "200 ng to 600 ng" in order to cause "methamphetamine users [to] exhibit violent and irrational behavior." That McCormick could have been violent and irrational despite the relatively low level of methamphetamine in his system was entirely consistent with, and helpful to, Custer's claim of self-defense.

We agree with the district court that counsel's performance was not deficient and therefore find no merit to this assignment of error.

### (b) Cross-Examination of Billy Fields

Custer argues that counsel was ineffective in advising him to discredit Billy Fields' testimony, which Custer claims ultimately led Custer to change Custer's testimony.

Custer testified that a few days before the shooting, McCormick came to an apartment in which Custer was staying and demanded that Custer repay the money that McCormick had loaned him. Custer testified that during this exchange, neither he nor McCormick threatened each other with a knife.

At trial, however, Fields testified on cross-examination that while Fields did not see anything, Custer told him after the exchange that "he had pulled a knife on [McCormick] and that [McCormick] had pulled one back." On cross-examination,

Fields initially claimed that he had explained this account in his deposition, but when pressed by Custer's counsel, Fields was unable to find this testimony in the transcript of that deposition. Counsel then asked Fields: "[I]t's safe to say the first time you ever said that was yesterday in court, correct?" Fields agreed. But on redirect, the State presented Fields with his deposition and requested that he read certain lines the State had identified in which Fields had stated that Custer and McCormick pulled knives on each other. In addition, Custer's testimony at trial of the same incident contradicted Fields' testimony.

Assuming that counsel was ineffective in his attempt to attack Fields' credibility, Custer has not shown that he was prejudiced. The incident in which McCormick allegedly pulled a knife on Custer occurred several days before the shooting and did not provide a basis for the jury to find, as Custer contends, that Custer feared for his life at the time of the shooting. Indeed, evidence at trial showed that Custer and McCormick had exchanged threats the night of the shooting, at which point Custer drove over to Syrus Leal's house, where he knew McCormick was, to confront McCormick. Therefore, even if counsel was deficient in this line of questioning, Custer has not shown that he was prejudiced by counsel's performance. There is no merit to Custer's assertion that counsel was ineffective.

### (c) Cross-Examination of
### Officer James Bush

Custer argues that counsel was ineffective for failing to "highlight" critical facts on the cross-examination of Officer James Bush about the collection of guns and drug paraphernalia found at Leal's house.[13] Custer contends that "[c]ritical to [his] self-defense claim was a general knowledge as to [Leal's] being an armed ex-felon" and that counsel "squandered an

---

[13] Brief for appellant at 18.

opportunity to show the seriousness of the envir[on]ment at [Leal's] house." Custer also argues that Leal could have given McCormick a weapon at the time of the incident which resulted in McCormick's death.

Bush, the State's witness, was a patrol officer for the city of Sidney, Nebraska. Bush testified that exhibits 86 through 90 contained photographs of the firearms and drug paraphernalia found in Leal's house. Bush further testified that "the firearms were located in the southwest bedroom closet." In addition, Fields also testified that there were at least four weapons at Leal's house. Custer testified in his defense, but did not mention in his testimony any concern he had about the weapons in Leal's house at the time of the shooting.

We find Custer's allegation to be without merit. Custer's motion does not explain what he believes counsel should have done to further emphasize this evidence. As such, Custer has failed to allege sufficient facts to support his allegation. We further note that because Bush and other witnesses testified about the weaponry found at Leal's house, the jury was aware of that fact.

Assuming that Custer has made sufficient allegations to preserve his claim of ineffective assistance of counsel as to this issue, we still find no prejudice in counsel's handling of this issue. There is no merit to this assignment of error.

### (d) Failure to Call
### Breen as Witness

Custer contends that his counsel was ineffective for failing to call Breen, a lawyer from the Commission on Public Advocacy who was first appointed as Custer's counsel, because Breen "had been told the entire version of . . . Custer's side of the incidents leading up to the shooting death of . . . McCormick, within only a few days of the shooting" in order "to confirm the version of events as told by [Custer] at trial."[14] Custer

---

[14] *Id.* at 19.

argues that Breen could have testified that Custer "maintained from the beginning that he acted in self-defense" and that Custer "testified differently at the behest of" counsel due to "improper legal advice."[15]

Fields testified on direct examination that Custer had told him shortly after the shooting that McCormick "had come running at [Custer] with something in his hand," so Custer shot at him. Fields testified again on direct examination that Custer told him that McCormick "had rushed [Custer] and that [McCormick] had something in his hand."

Custer has not identified how Breen's testimony of Custer's account following the shooting and immediately prior to trial would have differed from the account that Custer relayed to Fields shortly after the shooting and prior to trial. Custer has only alleged that Breen would "underscore" that Custer "testified [at trial] differently at the behest of his unethical lawyer . . . whom [sic] gave him improper legal advice."[16] Custer has not alleged what Breen would testify to in support of Custer's claim that he changed his testimony due to counsel's "improper legal advice." Custer alleged only mere conclusions of law and has not alleged sufficient facts to support his allegation of ineffective assistance of counsel. There is no merit to Custer's arguments on appeal.

### (e) Failure to Object

Custer argues that counsel was ineffective for failing to object to (1) a statement made by the prosecutor in closing argument that Custer could "accurately testify in relation to the evidence . . . because he had had 15 months to review the evidence, discovery, and hear all the testimony given in the case";[17] (2) an analogy made by the prosecutor in closing statements; (3) "badgering the witness about someone else yelling

---

[15] *Id.* at 20.

[16] *Id.*

[17] *Id.* at 22.

during the shooting";[18] (4) an inquiry made by the State into Custer's criminal history during direct examination of Fields; and (5) testimony from Fields that Custer was not scared of McCormick. The district court held that counsel's failure to object in each of these instances was not deficient and that Custer had not shown he was prejudiced.

First, Custer contends that the prosecutor's statements in closing arguments were improper when the prosecutor stated that Custer could "accurately testify in relation to the evidence . . . because he had had 15 months to review the evidence."[19] We have already addressed this allegation in our opinion in Custer's direct appeal.[20] We held that

> the State's comments [made during closing arguments referencing the prosecutor's statements] regarding the amount of time [Custer] had to prepare his testimony for trial and the State's comments highlighting [Custer's] failure to report the shooting and McCormick's alleged aggressive actions to the police . . . were not improper and did not constitute prosecutorial misconduct.[21]

We will not revisit the matter here.[22] There is no merit to this assertion.

Custer next contends that counsel was ineffective for failing to object to the prosecutor's closing argument when the prosecutor relied on an analogy that Custer's account of the circumstances surrounding the shooting were a "lie" and a "fantasy," much like the story about Santa Claus that he told his son at Christmas. In order for his son to believe in Santa Claus, the prosecutor explained, his son would have to "ignore the evidence." The prosecutor then stated that Custer's account

---

[18] *Id.* at 24.

[19] See *id.* at 22.

[20] *State v. Custer, supra* note 1.

[21] *Id.* at 107, 871 N.W.2d at 259.

[22] See *Thomas v. State*, 268 Neb. 594, 685 N.W.2d 66 (2004).

"doesn't comport with reality. He is asking you to ignore the evidence. It does not fit common sense." Custer contends that the analogy was "religiously infused," thus "playing to the passions and prejudices of the jury."

[7-10] The Nebraska Rules of Professional Conduct set forth that a lawyer shall not, in trial, "state a personal opinion as to the . . . credibility of a witness . . . or the guilt or innocence of an accused."[23] But we have explained that "when a prosecutor's comments rest on reasonably drawn inferences from the evidence, the prosecutor is permitted to present a spirited summation that a defense theory is illogical or unsupported by the evidence and to highlight the relative believability of witnesses for the State and the defense."[24] Thus, in cases where a prosecutor comments on the theory of defense, the defendant's veracity, or the defendant's guilt, the prosecutor crosses the line into misconduct only if the prosecutor's comments are expressions of the prosecutor's personal beliefs rather than a summation of the evidence.[25] In assessing whether a prosecutor's statements were misconduct, we "look[] at the entire context of the language used to determine whether the prosecutor was expressing a personal opinion or merely submitting to the jury a conclusion that the prosecutor is arguing can be drawn from the evidence."[26]

Custer mischaracterizes the prosecutor's analogy. The prosecutor's statements were not "religiously infused." Instead, looking at the entire context of the language, the statement to which Custer takes issue established an inference that the jury would have to "ignore the evidence" to believe Custer's account. Thus, the prosecutor was arguing that a conclusion could be drawn from the evidence that Custer lied in his

---

[23] Neb. Ct. R. of Prof. Cond. § 3-503.4(e).

[24] *State v. Gonzales*, 294 Neb. 627, 645, 884 N.W.2d 102, 117 (2016).

[25] *State v. Gonzales, supra* note 24.

[26] *Id*. at 647, 884 N.W.2d at 118.

testimony. Because the prosecutor's analogy was not an expression of a personal opinion in support of religion, or an effort to inflame the jurors' prejudices or excite their passions against the accused, we find no error in the prosecutor's comments.

[11] Custer next argues that counsel was ineffective for failing to object to questioning about "someone else yelling during the shooting, which wasn't in evidence."[27] Custer argued this assertion in his brief, but did not allege this in his motion for postconviction relief. An appellate court will not consider as an assignment of error a question not presented to the district court for disposition through a defendant's motion for postconviction relief.[28] Therefore, we do not consider this allegation.

Custer also contends that counsel was ineffective for failing to object to questions during the direct examination of Fields about Custer's prior criminal record and status as a felon. Custer contends that counsel should have invoked Neb. Rev. Stat. § 27-609 (Reissue 2016), which deals with the impeachment by evidence of a conviction for a crime. Custer takes issue with the following question counsel directed at Fields on direct examination: "Q: [Custer] also is a felon, is that correct? [Fields]: Yes." While not cited by Custer, counsel then proceeded to ask:

> Q: And where has he done some time? State or —
> [Fields]: State jail.
> Q: State and county jail?
> A: Yeah.
> . . . .
> Q: Okay, and in fairness to him, I mean there is nothing similar to these charges?
> A: No.
> Q: It was theft or those types of things?
> A: That stuff, yes.

---

[27] Brief for appellant at 24.

[28] *State v. Haas*, 279 Neb. 812, 782 N.W.2d 584 (2010).

Section 27-609(1) provides for the impeachment of a witness on cross-examination when the witness has committed a felony or a crime of dishonesty.[29] After the conviction is established, "'the inquiry must end there, and it is improper to inquire into the nature of the crime, the details of the offense, or the time spent in prison as a result thereof.'"[30]

Counsel's conduct was not deficient. Having reviewed the record, it is apparent that the purpose of this line of questioning was to emphasize that Custer's prior criminal record was nonviolent. Given that Custer was charged in this case with first degree murder, it was not deficient for counsel to emphasize that while Custer might have a criminal record, the prior charges for which he was convicted were not violent crimes.

And even if counsel was deficient in questioning Fields about Custer's prior criminal record and status as a felon, Custer's claim fails for lack of prejudice. On direct examination, Custer also testified that he had been convicted of a felony and listed the felonies on his criminal record. There is no merit to this allegation of ineffective assistance of counsel.

In addition, Custer contends that counsel was ineffective for failing to object to an answer made by Fields, which Custer contends was hearsay. Custer takes issue with the following inquiry in the State's direct examination of Fields: "Q: How about, to your knowledge did [Custer] ever indicate that he was scared of [McCormick] to you? [Fields]: No. Q: He didn't indicate that [to] you? A: No." Custer claims that counsel should have objected to Fields' answer as hearsay, because Fields "is unqualified to know the thoughts and fears of [Custer]."[31]

Custer mischaracterizes the above line of inquiry. The State asked whether Custer had indicated to Fields that he was

---

[29] See *State v. Castillo-Zamora*, 289 Neb. 382, 855 N.W.2d 14 (2014).

[30] *Id.* at 388, 855 N.W.2d at 22, quoting *State v. Johnson*, 226 Neb. 618, 413 N.W.2d 897 (1987).

[31] Brief for appellant at 25.

scared of McCormick. A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter.[32] The question concerns whether Custer had indicated anything to Fields. This is a fact within Fields' personal knowledge of the matter and, as such, was admissible.[33] Counsel was not deficient for failing to object.

There is no merit to this assignment of error.

### (f) Jury Instructions

Custer argues that counsel was ineffective for (1) failing to submit a proper jury instruction on self-defense in accordance with *State v. Miller*[34] and NJI2d Crim. 7.3; (2) failing to provide a "self-defense option on jury verdict form, and only 1 jury verdict form was sent to the jury room, which prevented multiple jurors from seeing the jury form and understanding it completely";[35] (3) failing to identify manslaughter as voluntary manslaughter in jury instructions Nos. 4 and 5; (4) using the wrong definition of "premeditation" in jury instruction No. 7; (5) failing to include jury instruction No. 10, "Self Defense (Deadly Force)," as part of jury instruction No. 3, "Reasonable Doubt"; and (6) failing to object to jury instruction No. 14, because it "is confusing."[36]

We find that the jury was instructed on Custer's claim of self-defense. Jury instruction No. 4 states, under the elements of first degree murder, "[t]hat the Defendant did not do so in self-defense." Similarly, this phrase is also listed under the elements of second degree murder and manslaughter.

The language of jury instruction No. 10 comes directly from NJI2d Crim. 7.3. Custer contends that the language is improper

---

[32] Neb. Rev. Stat. § 27-602 (Reissue 2016).

[33] See *id.*

[34] *State v. Miller*, 281 Neb. 343, 798 N.W.2d 827 (2011).

[35] Brief for appellant at 26.

[36] *Id.* at 29.

in light of *State v. Miller*.[37] But Custer fails to allege how the instruction should have read in order for it to be "proper." Therefore, we find that the above jury instruction properly instructed the jury on self-defense.

Second, we find that "a self-defense option" was clearly explained in the jury instructions. As we stated, jury instruction No. 10 defines self-defense under the circumstances of this case. Jury instruction No. 4 further states that the jury must find Custer not guilty of count I if "you find the State has failed to prove beyond a reasonable doubt any one or more of the elements." Because "[t]hat the Defendant did not do so in self-defense" was one of the elements of first degree murder, second degree murder, and manslaughter, it necessarily follows that if the jury found the State had not proved that element, the jury would have to find Custer not guilty of both counts I and II. Therefore, the jury instructions provided adequate explanation and opportunity for the jury to find that Custer acted in self-defense.

We do not consider the remainder of Custer's allegations on appeal, because they were not alleged in his motion for postconviction relief.

There is no merit to this assignment of error.

## 2. APPOINTMENT OF COUNSEL

Finally, Custer contends that the district court erred in denying him appointment of counsel because the "instant action" is a "'critical stage of a criminal prosecution.'"[38]

[12-14] There is no federal or state constitutional right to an attorney in state postconviction proceedings.[39] Under the Nebraska Postconviction Act, it is within the discretion of the trial court as to whether counsel shall be appointed to

---

[37] *State v. Miller, supra* note 34.

[38] Brief for appellant at 10.

[39] *State v. McGhee*, 280 Neb. 558, 787 N.W.2d 700 (2010).

represent the defendant.[40] Where the assigned errors in the postconviction petition before the district court are either procedurally barred or without merit, establishing that the postconviction action contained no justiciable issue of law or fact, it is not an abuse of discretion to fail to appoint appellate counsel for an indigent defendant.[41] Because Custer's postconviction motion presents no justiciable issues, the district court did not err in not appointing Custer postconviction counsel.

## VI. CONCLUSION

We conclude the district court did not err when it determined that Custer's motion for postconviction relief did not allege facts which constituted a denial of his constitutional rights and accordingly denied Custer's motion. The judgment of the district court is affirmed.

AFFIRMED.

WRIGHT, J., not participating in the decision.

---

[40] *Id.*

[41] *State v. Silvers*, 255 Neb. 702, 587 N.W.2d 325 (1998).