IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. MUHAMMAD

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

KHALID A. MUHAMMAD, APPELLANT.

Filed June 26, 2018.    No. A-17-532.

Appeal from the District Court for Sarpy County: PATRICIA A. LAMBERTY, Judge, Retired. Affirmed.

Khalid A. Muhammad, pro se.

Douglas J. Peterson, Attorney General, and Sarah E. Marfisi for appellee.

MOORE, Chief Judge, and BISHOP and WELCH, Judges.

MOORE, Chief Judge.

## I. INTRODUCTION

Khalid A. Muhammad was convicted in the district court for Sarpy County of receiving stolen property valued at more than $1,500, found to be a habitual criminal, and sentenced to 10 to 40 years' imprisonment. His conviction and sentence were affirmed by this court on direct appeal. See *State v. Muhammad*, 17 Neb. App. xvi (No. A-08-078, Mar. 29, 2009). Muhammad then filed a motion for postconviction relief, alleging various claims of ineffective assistance of trial counsel. The district court denied Muhammad's motion without an evidentiary hearing. Muhammad appealed, and this court affirmed in part and in part reversed and remanded for further proceedings. See *State v. Muhammad*, No. A-11-890, 2012 WL 1948473 (Neb. App. May 29, 2012) (selected for posting to court website). Following an evidentiary hearing on remand, the district court again denied Muhammad's motion for postconviction relief, and Muhammad

perfected the present appeal. On appeal, he assigns error to the court's denial of his remaining claims for ineffective assistance of trial counsel and of his request for appointment of postconviction counsel. Finding no error, we affirm.

## II. BACKGROUND

### 1. PRELIMINARY HEARINGS

In December 2006, the State filed a complaint in the county court for Sarpy County, charging Muhammad with receiving stolen property valued at more than $1,500. The county court appointed the Sarpy County public defender's office to represent Muhammad. Patrick Boylan of the public defender's office represented Muhammad at the first preliminary hearing date of January 8, 2007. The preliminary hearing was continued to January 29, and Thomas Strigenz from the public defender's office represented Muhammad on that date. Following the preliminary hearing, the county court found probable cause for the charge and bound Muhammad over to the district court for Sarpy County on January 29, where he was initially represented by W. Thomas Brantley of the public defender's office.

On January 31, 2007, the State filed an information in the district court, charging Muhammad with receiving stolen property with a value in excess of $1,500 in violation of Neb. Rev. Stat. § 28-517 (Reissue 2016), a Class III felony. On June 15, the State filed an amended information, adding a habitual criminal enhancement pursuant to Neb. Rev. Stat. § 29-2221 (Reissue 2016). At some point, the State offered to amend the charge to a Class IV felony and dismiss the habitual criminal enhancement in exchange for a guilty plea, but Muhammad rejected the plea offer.

While represented by Brantley, Muhammad had disagreements with Brantley, including disagreements about the value of certain witnesses to the case, and ultimately the district court granted Muhammad's request for a new attorney. A jury trial was scheduled for September 12 and 13, 2007, but on September 7, Muhammad filed a waiver of jury trial and on September 11, the court received his motion to continue. Also on September 11, Muhammad filed a pro se motion to withdraw his waiver of jury trial and a request for new counsel. A hearing was held on these motions on September 21, at which time the court overruled the motion to withdraw the waiver of jury trial and sustained the request for new counsel. The court then appointed Michael Schirber to represent Muhammad, and Schirber represented Muhammad through trial and sentencing.

### 2. TRIAL

During the evidentiary hearing in the present postconviction proceedings, the district court took judicial notice of the bill of exceptions from the October 30, 2007, bench trial, and we summarize the trial evidence relevant to Muhammad's postconviction claims.

At trial, Dasown Nix testified that on December 10, 2006, he arrived home shortly past midnight and parked his vehicle next to the apartment building in Lincoln, Nebraska, where he resided. When he exited his vehicle, he was confronted by three assailants. During the confrontation, an assailant hit Nix with a pistol, and Nix shot one of the assailants with his own weapon. Nix then ran for safety while another assailant fired shots at him. Nix dropped his keys, which were picked up by one of the assailants. An assailant then drove away in Nix's vehicle. Nix

could not later identify any of the assailants. The parties stipulated that Nix's vehicle was worth more than $1,500.

Troopers with the Nebraska State Patrol testified about the traffic stop of Nix's stolen vehicle executed shortly before 4 a.m. on December 10, 2006, which occurred on Interstate 80 eastbound between Lincoln and Omaha in Sarpy County. Muhammad was the driver and sole occupant of the stolen vehicle. The troopers arrested Muhammad, and during a subsequent interview, he stated that someone woke him up in the middle of the night and told him to drive the vehicle to Omaha. We note that Muhammad did not contest at trial that he had been in possession of a stolen vehicle; rather, his attorney argued that Muhammad was not guilty because he had not known that the vehicle was stolen. At the same time as the traffic stop of the stolen vehicle, troopers also executed a traffic stop of a vehicle that was following the stolen vehicle. Muhammad's brother, Barry Fletcher, was the driver of that vehicle.

William Scurry testified for the State at trial. According to Scurry, he was one of the assailants who stole Nix's vehicle on December 10, 2006. Scurry testified that the other two assailants were Fletcher and Muhammad and that they had formed a plan over the course of several weeks to steal Nix's vehicle, narcotics, and money. Scurry testified that during the robbery, Nix shot him and that afterwards, he and Fletcher drove to the home of his aunt, Deandra Moody. According to Scurry, Muhammad was "standing on top of the hill shooting a gun" toward Nix as Fletcher and Scurry were leaving. On cross-examination, Muhammad's attorney asked whether a different individual, Daniel Robinson, had been present during the robbery. Scurry acknowledged that Robinson was his cousin and that they spent time together, but he denied that Robinson took part in the robbery.

Muhammad called Moody as a witness. She testified that Fletcher and Scurry arrived at her apartment with Robinson "late at night," around 10 or 10:30 p.m. on the date in question. According to Moody, Muhammad was not with them. She confirmed that Scurry had a gunshot wound when he arrived. Moody testified that Robinson left Nebraska "[d]irectly after everything happened."

Muhammad also presented testimony from Judith Fletcher (Judith), who is Fletcher's mother. According to Judith, Muhammad lived with her at the time of the robbery. She testified that Muhammad was at home that evening, that he went to bed about 10 p.m., and that Fletcher telephoned for Muhammad sometime after midnight. According to Judith, Muhammad left the residence after the telephone call between 12:30 and 1 a.m.

The district court overruled Muhammad's oral motion to dismiss at the close of the State's evidence as well as his renewed motion to dismiss at the end of all evidence. After hearing the parties' closing arguments, the court took the matter under advisement, and on October 31, 2007, the court entered a verdict, finding Muhammad guilty of receiving stolen property valued at more than $1,500 and setting a hearing on the habitual criminal allegations.

Muhammad filed a motion for a new trial on November 5, 2007, and on November 16, following a hearing on the new trial motion and the issue of enhancement, the district court found Muhammad was a habitual criminal. At Muhammad's request, the court took the motion for new trial under advisement until the time of sentencing. On December 21, the court sentenced

Muhammad to 10 to 40 years' imprisonment and granted him credit for 247 days already served. The court also overruled Muhammad's motion for new trial.

### 3. DIRECT APPEAL

Muhammad timely appealed to this court. He was represented by different counsel on direct appeal than during his trial. In a memorandum opinion, we affirmed Muhammad's conviction and sentence. We found no merit to certain of Muhammad's allegations of ineffective assistance of counsel, but we determined that the record was insufficient on direct appeal to address other claims of ineffective assistance raised by Muhammad, including claims that his counsel was ineffective for failing to depose witnesses and conduct reasonable discovery, failing to call certain witnesses, and failing to appropriately challenge the prosecution's failure to turn over certain evidence. See *State v. Muhammad*, 17 Neb. App. xvi (No. A-08-078, March 24, 2009).

### 4. POSTCONVICTION MOTION AND
### FIRST POSTCONVICTION APPEAL

On June 8, 2011, Muhammad filed a pro se verified motion for postconviction relief in the district court. The court denied Muhammad's motion without an evidentiary hearing. The court held that Muhammad's claims of prosecutorial misconduct and certain of his assertions with respect to ineffective assistance of trial counsel were procedurally barred because they could have been raised on direct appeal or had been disposed of by this court on direct appeal. With respect to Muhammad's claims of ineffective assistance of trial counsel that this court had declined to address on direct appeal, the district court found that Muhammad had failed to allege sufficient facts concerning his assertions to merit an evidentiary hearing and held that these claims involved strategic decisions; further, the court held that Muhammad failed to allege sufficient facts to demonstrate that counsel had been ineffective. The court also held that Muhammad failed to allege sufficient facts concerning his assertions of ineffective assistance of appellate counsel. Finally, the court found that Muhammad's assertions of trial court error were procedurally barred because they could have been raised on direct appeal but were not.

Muhammad appealed to this court, and in a memorandum opinion we affirmed the denial of many of Muhammad's postconviction claims. However, we remanded for an evidentiary hearing on his claims that his trial counsel was ineffective in failing to investigate specific witnesses and evidence, failing to obtain specific evidence from the State, and failing to seek sanctions despite knowing of undisclosed evidence. See *State v. Muhammad*, No. A-11-890, 2012 WL 1948473 (Neb. App. May 29, 2012) (selected for posting to court website).

### 5. COUNSEL ON REMAND

On remand, the district court appointed Donald Schense to represent Muhammad for purposes of the evidentiary hearing. In June 2013, Muhammad filed a pro se motion, seeking to discharge his appointed counsel and seeking appointment of a new attorney. On June 7, the court entered an order denying Muhammad's motion. The court found no showing of misconduct, only disagreements in the manner in which Schense was addressing the postconviction case. The court noted Muhammad's history of representation by counsel in this case, and it observed that he had

expressed dissatisfaction with each of his prior attorneys. Because there was no showing of incompetent representation by Schense, the court determined that Muhammad must either proceed with representation by Schense, proceed pro se, or retain his own counsel. The court gave Muhammad 10 days to inform the court in writing of which option he intended to pursue, and it stated, that if Muhammad did not provide a written election of options in 10 days, Schense would continue to serve as attorney of record. Muhammad filed a pro se appeal from the court's June 7 order, which this court dismissed pursuant to Neb. Ct. R. App. P. § 2-107(A)(2) (rev. 2016) as Muhammad had not appealed from a final appealable order. See *State v. Muhammad*, 21 Neb. App. xxxiv (No. A-13-527, July 26, 2013).

After Muhammad's appeal was dismissed, Schense filed a motion to withdraw, citing a serious material break down in the attorney-client relationship and noting that Muhammad had filed a civil case against him. In granting Schense's motion, the district court noted that Muhammad did not object to his counsel's request to withdraw. During the hearing on Schense's motion, Muhammad requested new counsel, a request to which the State objected. The court declined to appoint new counsel, finding that in seeking to discharge previous attorneys and in filing various pro se pleadings and documents even while represented by counsel, Muhammad was seeking to act as his own attorney or pick his court-appointed counsel. The court observed that Muhammad has essentially refused to accept any of his court-appointed attorneys and determined that by acting as his own attorney, he has elected to proceed pro se.

### 6. EVIDENTIARY HEARING AND PRESENT APPEAL

An evidentiary hearing on Muhammad's remaining claims for postconviction relief was held before the district court on March 30, 2017. The court received evidence offered by Muhammad, including the depositions of his trial attorneys, Strigenz, Boylan, Brantley, and Schirber; the deposition of proposed defense witness, Fletcher; and live testimony from a police officer and from Strigenz, Boylan, and Brantley. We have set forth specific details of the evidence received as necessary in the analysis section below.

On May 4, 2017, the district court entered an order denying Muhammad's remaining claims for postconviction relief. Muhammad subsequently perfected the present appeal to this court.

### III. ASSIGNMENTS OF ERROR

Muhammad asserts, consolidated and restated, that the district court erred in (1) denying his postconviction claims for ineffective assistance of trial counsel because his attorneys were ineffective in various regards and (2) failing to appoint postconviction counsel after his previous counsel withdrew.

### IV. STANDARD OF REVIEW

In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. *State v. McGuire*, 299 Neb. 762, 910 N.W.2d 144 (2018). An appellate court upholds the trial court's factual findings unless they are clearly erroneous. *Id.* When reviewing a question of law, an appellate court resolves the question independently of the lower court's conclusion. *Id.*

A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact. *Id.* When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id.* With regard to questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's conclusion. *State v. McGuire, supra.*

Failure to appoint counsel in postconviction proceedings is not error in the absence of an abuse of discretion. *State v. Epp*, 299 Neb. 703, 910 N.W.2d 91 (2018).

## V. ANALYSIS

### 1. INEFFECTIVE ASSISTANCE OF COUNSEL

Muhammad asserts that the district court erred in denying his postconviction claims for ineffective assistance of trial counsel. Specifically, he asserts that his various trial counsel were ineffective for failing to investigate specific witnesses, obtain specific evidence and witnesses made known to them, and object or seek a sanction when the State did not provide full and complete disclosure.

To establish a right to postconviction relief because of counsel's ineffective assistance, the defendant has the burden, in accordance with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Collins*, 299 Neb. 160, 907 N.W.2d 721, 724 (2018). Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. *Id.* To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *State v. Glass*, 298 Neb. 598, 905 N.W.2d 265 (2018). A court may address the two prongs of this test, deficient performance and prejudice, in either order. *State v. Collins, supra*.

The entire ineffectiveness analysis is viewed with a strong presumption that counsel's actions were reasonable. *State v. Alarcon-Chavez*, 295 Neb. 1014, 893 N.W.2d 706 (2017). When reviewing claims of ineffective assistance, an appellate court will not second-guess a trial counsel's reasonable strategic decisions. *Id.* And an appellate court must assess the trial counsel's performance from the counsel's perspective when the counsel provided the assistance. *Id.*

### (a) Preliminary Hearing and Plea in Abatement

Muhammad first argues that Strigenz and Boylan were ineffective in failing to investigate, depose, or subpoena Fletcher and Judith before the preliminary hearing. He argues that, had they done so, such investigation would have revealed that Muhammad did not possess knowledge that the property at issue in the criminal proceedings, Nix's vehicle, had been stolen. Muhammad relies on testimony from Fletcher's deposition received at the evidentiary hearing, indicating that Muhammad knew nothing about the vehicle he was driving on the night in question. He argues

that as a result of his attorneys' failure to present such evidence, he was bound over to district court. He also argues that Brantley, who filed a plea in abatement in the district court, failed to present such mitigating evidence, which led to denial of the plea in abatement.

The purpose of a preliminary hearing is to ascertain whether a crime was committed and whether there is probable cause to believe the accused committed it. *State v. Nesbitt*, 264 Neb. 612, 650 N.W.2d 766 (2002). A plea in abatement is used to challenge the sufficiency of the evidence at a preliminary hearing; to resist a challenge by a plea in abatement, the evidence received need show only that a crime was committed and that there is probable cause to believe that the accused committed it. See *State v. Lasu*, 278 Neb. 180, 768 N.W.2d 447 (2009). The test at a preliminary hearing is not whether guilt is established beyond a reasonable doubt, but, rather, whether evidence is adduced that shows a crime was committed and that there is probable cause to believe that the accused committed the crime. *State v. Rossbach*, 264 Neb. 563, 650 N.W.2d 242 (2002). Any error in ruling on a plea in abatement is cured by a subsequent finding at trial of guilt beyond a reasonable doubt which is supported by sufficient evidence. *State v. Green*, 287 Neb. 212, 842 N.W.2d 74 (2014).

Under § 28-517, "[a] person commits theft if he receives, retains, or disposes of stolen movable property of another knowing that it has been stolen, or believing that it has been stolen, unless the property is received, retained, or disposed with intention to restore it to the owner." Knowledge, like intent, may be inferred from the circumstances surrounding the act. *State v. Almasaudi*, 282 Neb. 162, 802 N.W.2d 110 (2011).

In their depositions received into evidence at the evidentiary hearing, both Strigenz and Boylan testified that it was not their practice to depose witnesses prior to or call witnesses at a preliminary hearing. Specifically, Boylan testified that he was not sure he would have been allowed to conduct depositions during the county court proceeding and that he would not typically do so because the burden is on the State at that stage. Strigenz testified that witnesses were not called at the preliminary hearing because that is the time to see if the State can meet its burden of probable cause. Also, Strigenz did not recall being given the names of the witnesses referenced by Muhammad, and, similarly to Boylan, he testified that he did not have the right to depose witnesses until the case had been bound over to district court.

The decision to call, or not to call, a particular witness, made by counsel as a matter of trial strategy, even if that choice proves unproductive, will not, without more, sustain a finding of ineffectiveness of counsel. *State v. Alarcon-Chavez*, 295 Neb. 1014, 893 N.W.2d 706 (2017). A defense attorney has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Id.* A reasonable strategic decision to present particular evidence, or not to present particular evidence, will not, without more, sustain a finding of ineffective assistance of counsel. *Id.*

Here, the record shows that Strigenz and Boylan made reasonable strategic decisions by declining to investigate witnesses prior to or call witnesses at the preliminary hearing. They focused on requiring the State to meet its burden of proving probable cause and avoided drawing undue attention to Muhammad's alleged participation in another crime. Because Muhammad's knowledge that the property in question was stolen can be inferred from the circumstances, he has not shown how presentation of testimony at the preliminary hearing from Fletcher or Judith about

his alleged lack of knowledge that the vehicle was stolen would have prevented a finding of probable cause sufficient to bind the case over to district court. Muhammad has not shown that either Strigenz or Boylan performed deficiently in failing to investigate witnesses prior to or call witnesses at the preliminary hearing. Nor has he shown that he was prejudiced by their decisions in this regard.

Finally, beyond arguing that Brantley failed to present mitigating evidence at the hearing on the plea in abatement, which led to its denial, Muhammad does not argue that presenting such evidence would have rendered the evidence presented at the preliminary hearing insufficient to bind him over to the district court. As previously noted, Muhammad's knowledge that the vehicle was stolen could be inferred from the circumstances, and the test at a preliminary hearing is only whether the evidence shows that a crime was committed and probable cause that it was committed by the defendant. See *State v. Rossbach*, 264 Neb. 563, 650 N.W.2d 242 (2002).

Muhammad's first argument is without merit.

(b) Brantley and Schirber Discovery Issues

Muhammad's next arguments concern two similar police reports attached to multiple depositions in the record: a 7-page police report relating to an interview with Nix in a separate narcotics investigation and a shorter 2-page version of the report, which omits much of the information from the longer report but reproduces a section pertaining to information Nix provided during the interview with respect to Scurry and Fletcher's participation in the robbery of him on December 10, 2006. While the 2-page version was apparently received in discovery, Muhammad argues that both Brantley and Schirber were ineffective in failing to obtain the longer 7-page report through discovery.

Muhammad argues that his attorneys' failure to obtain the 7-page report was significant because it contained information implicating Robinson or Rashaun Ramsey as the third assailant of Nix. However, the 7-page report is generally unrelated to Muhammad's case and does not seriously implicate either Robinson or Ramsey in the robbery. As relevant here, in a section of the 7-page report concerning Nix's drug dealings with Robinson and Ramsey, it states, "Nix said the more he thought about it Ramsey may have had something to do with the robbery in which Nix was the victim in December 2006. Nix could not provide any specific details." These sentences are not contained in the shorter version of the report. Both reports contain the section in which Nix implicated Scurry and Fletcher (whose last name he did not know) in the robbery, but in which he stated he did not know the identity of the third person.

Muhammad does not argue that the information in the 7-page report about Nix's drug dealings with various individuals is relevant to this case. The additional information with respect to the robbery found in the 7-page report is speculative, and Muhammad has not demonstrated a reasonable probability that the outcome of the trial would have been different had his attorneys obtained the longer report through discovery. Muhammad argues that he was prejudiced by his attorneys' failure to obtain the 7-page report during discovery because then "[counsel] would have discovered the name [sic] Rash[au]n Ramsey and Daniel Robinson." Brief for appellant at 13. Muhammad also argues that the 7-page report's reference to Ramsey and Robinson corroborates

Fletcher's testimony received at the evidentiary hearing that Fletcher, Scurry, and Robinson were the three assailants who stole Nix's vehicle.

Muhammad's arguments do not demonstrate that his attorneys performed deficiently with respect to discovery. Schirber testified in his deposition that he filed a motion for discovery, which was sustained by the district court, and that he entered into a stipulation for reciprocal discovery. At the October 2007 hearing on Schirber's motion for discovery, he represented to the court that the State through reciprocal discovery had provided "copious" police reports from the Nebraska Highway Patrol and the Lincoln Police Department. He also informed the court that the State had endorsed Scurry and Nix as witnesses and that there had been "a suggestion made that one or both of those persons have given some kind of proffered statement, factual statement to federal investigative authorities." Schirber informed the court that the purpose of his motion was to insure receipt of any such statements prior to trial. At the discovery hearing, the prosecutor represented that the State had provided everything it had to Schirber, including a long transcribed interview from the United States Attorney's office. In his deposition received at the postconviction evidentiary hearing, Schirber testified that he was not aware of any undisclosed information that would have made a difference in Muhammad's criminal case. He also testified that, having seen Scurry's and Nix's "subsequent statements," they "almost parrot" their testimony at Muhammad's criminal trial. Muhammad has failed to show that Brantley or Schirber performed deficiently with respect to discovery.

Likewise, Muhammad's arguments do not demonstrate prejudice. First, we observe that Schirber was aware of Robinson and during cross-examination at trial asked Scurry whether Robinson was present with Scurry during the robbery of Nix. Next, as noted above, the 7-page police report refers to Nix's early drug transactions with Robinson and does not suggest that Robinson participated in the robbery of Nix. Thus, it does not corroborate Fletcher's statements received at the evidentiary hearing, which indicated that Fletcher, Scurry, and Robinson took Nix's vehicle. Finally, reference in the 7-page report to Ramsey is too speculative to satisfy Muhammad's burden that his attorney's discovery of this information prior to trial had a reasonable probability of changing the outcome of the trial. Schirber cross-examined Nix at trial about the identity of the assailants, but Nix stated he did not recognize their faces or voices.

Muhammad's arguments with respect to Brantley and Schirber and discovery issues are without merit.

### (c) Schirber Failure to Depose/Call Witnesses

Muhammad next argues that Schirber was ineffective for failing to depose Fletcher, Judith, and Moody before trial and in failing to call Fletcher as a witness at trial. Again, these are issues of trial strategy, and the record does not show that Schirber performed deficiently or that Muhammad was prejudiced.

Schirber testified that he did not "deem it necessary" to depose Fletcher, Judith, or Moody because he had an idea of what they would testify to at trial. He had either spoken to or read an affidavit signed by each of these witnesses prior to trial. We also note the testimony of Brantley, who preceded Schirber as Muhammad's attorney, that it is not his practice to depose his own witnesses because he generally knows what they are going to say. As we discussed above in the

background section, Judith and Moody testified for the defense at trial, and Muhammad has not demonstrated that their trial testimony was different than anticipated. He has not shown that the outcome of the proceedings would have been different had Schirber taken their depositions prior to trial. Accordingly, Muhammad has not shown deficient performance or prejudice from Schirber's failure to depose them.

With respect to Fletcher, Schirber testified that he had subpoenaed Fletcher to testify at trial but ended up not calling Fletcher as a witness because Muhammad asked him not to do so. According to Schirber, it probably would not have been helpful to have Fletcher testify and it was beneficial to not have him testify based on what Schirber knew about the case. Thus, the record reflects Schirber's reasonable strategic decision, made with Muhammad's input, which this court will not second guess. Schirber did not perform deficiently in this regard. Further, Muhammad cannot show prejudice from Schirber's failure to call Fletcher as a witness at trial. Schirber noted his understanding of the changing version of events Fletcher presented to authorities. Fletcher initially stated that Scurry offered him $50 to drive the stolen vehicle to Omaha but that he passed the offer on to Muhammad, who did not learn until after his arrest that it was stolen. Schirber understood that Fletcher later admitted that he participated in the robbery of Nix and that he also implicated Scurry and Robinson. Again, Schirber testified that Fletcher's expected testimony would not have been helpful and that, based on what he knew, it was beneficial not to have Fletcher testify. We have also reviewed but do not detail the contents of the deposition and affidavits of Fletcher, which were received at the evidentiary hearing. As noted above, Muhammad's knowledge that the vehicle was stolen could be inferred from the circumstances surrounding the request to drive the vehicle in question to Omaha and given the other trial evidence against him, he has not demonstrated that Fletcher's testimony had a reasonable probability of changing the outcome of the trial.

Muhammad's arguments with respect to Schirber's failure to depose and call the above witnesses is without merit.

### (d) Failure to Object or Seek Sanctions

Finally, Muhammad asserts that his attorneys were ineffective for failing to object or seek a sanction when the State did not provide full and complete disclosure, but he does not argue this error in the argument section of his brief. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. McGuire*, 299 Neb. 762, 910 N.W.2d 144 (2018). Accordingly, we do not consider it further.

### 2. FAILURE TO APPOINT COUNSEL

Muhammad asserts that the district court erred in failing to appoint postconviction counsel after his previous counsel withdrew. Muhammad argues that he is entitled to appointment of counsel on his postconviction action pursuant to the Nebraska Postconviction Act as well as "by the stipulation of the Court of Appeals when it remanded the matter to the district court." Brief for appellant at 17.

First, we observe that there is no federal or state constitutional right to an attorney in state postconviction proceedings. *State v. Custer*, 298 Neb. 279, 903 N.W.2d 911 (2017). Under the Nebraska Postconviction Act, it is within the discretion of the trial court as to whether counsel shall be appointed to represent the defendant. *Id.* Neb. Rev. Stat. § 29-3004 (Reissue 2016) provides that "[t]he district court may appoint not to exceed two attorneys to represent the prisoners in all [postconviction] proceedings" and that "[t]he attorney or attorneys shall be competent and shall provide effective counsel." Where the assigned errors in the postconviction petition before the district court are either procedurally barred or without merit, establishing that the postconviction action contained no justiciable issue of law or fact, it is not an abuse of discretion to fail to appoint appellate counsel for an indigent defendant. *State v. Custer, supra.*

With respect to Muhammad's second assertion, he is incorrect. In our memorandum opinion in Case No. 11-890, this court did not address appointment of postconviction counsel or direct the district court to appoint counsel upon remand. Instead, we reversed the court's finding that Muhammad's claims of ineffective assistance of trial counsel were appropriately resolved without an evidentiary hearing and remanded for further proceedings. See *State v. Muhammad*, No. A-11-890, 2012 WL 1948473 (Neb. App. May 29, 2012) (selected for posting to court website). In his brief on appeal, Muhammad references an exchange between him and the district court that occurred during a hearing on December 9, 2013, implying that the court indicated to him "a promise in some form that he is allowed to be appointed counsel." Brief for appellant at 18. However, a bill of exceptions for that hearing was not included in the record on appeal, and a party's brief may not expand the evidentiary record. *State v. Patton*, 287 Neb. 899, 845 N.W.2d 572 (2014). A bill of exceptions is the only vehicle for bringing evidence before an appellate court; evidence which is not made a part of the bill of exceptions may not be considered. *Id.* Regardless, we do not read the exchange as set forth in Muhammad's brief as anything other than an inquiry by the court as to how Muhammad wished to proceed after Schense's withdrawal, followed by Muhammad's request for appointment of counsel and the State's objection to that request.

In denying Muhammad's request, the district court observed:

[Muhammad] has now been represented by five different attorneys throughout these proceedings, and he has expressed dissatisfaction with each attorney. In addition, since the filing of the original charges in this case, [Muhammad] had continuously made *pro se* filings despite the fact that he has been represented by court-appointed counsel. By filing motions and other documents *pro se*, and without the knowledge of his counsel, [Muhammad] appears to be acting as his own attorney or seeking to choose his own court-appointed attorney.

The court then observed, citing *State v. Sack*, 239 Neb. 690, 477 N.W.2d 921 (1991), that an indigent accused does not have the right to appointed counsel of the accused's choice nor to be represented by an attorney the accused likes or with whom the accused has rapport. The court went on to state, "The continuous *pro se* filings, and the lawsuit filed against [Schense], indicate, however, that [Muhammad] is attempting to pick his court-appointed counsel, and by acting as his own attorney, this Court finds that he has elected to proceed *pro se*." The court cited *State v. Clark*, 216 Neb. 49, 342 N.W.2d 366 (1983), to note that an indigent defendant who refuses to accept

- 11 -

appointed counsel and elects to proceed pro se has not been deprived of his constitutional right to counsel. Accordingly, the court denied Muhammad's request for appointment of new counsel, noting that he had the option of retaining his own counsel or proceeding pro se.

We find no abuse of discretion in the district court's denial of Muhammad's request for appointment of replacement counsel after Schense's withdrawal. While it may be unusual for an indigent defendant to not be represented by counsel during an evidentiary hearing on a postconviction motion, a review of the record shows that Muhammad was thorough and prepared in his presentation of evidence at the hearing and in deposing witnesses prior to the hearing. He has filed numerous pro se documents while represented by counsel during the criminal and postconviction proceedings in this case and appears to have had disagreements with all of the attorneys who have represented him in these proceedings. As discussed above, Muhammad's remaining postconviction claims present no justiciable issues. The district court did not err in denying his request for appointment of new postconviction counsel.

## VI. CONCLUSION

The district court did not err in denying Muhammad's remaining postconviction claims for ineffective assistance of trial counsel or in denying his request for appointment of new postconviction counsel.

AFFIRMED.